**BAUSCH & LOMB INCORPORATED,**
**Plaintiff,**

v.

**ALCON LABORATORIES,**
**INC., Defendant.**

Civ.No. 94–6534L (Sc).

United States District Court,
W.D. New York.

Sept. 16, 1995.

Dennis A. Polyn, Rochester, Robert L. Baechtold, New York City, for plaintiff.

William L. Dorr, Rochester, W. Edward Bailey, New York City, for defendant.

## MEMORANDUM & ORDER

SCOTT, United States Magistrate Judge.

### Jurisdiction

Upon an Order dated August 3, 1995, this matter has been referred to this court pursuant to 28 U.S.C. 636(b)(1)(A).

There are three motions now before the Court: (1) Bausch & Lomb's Motion to Compel dated August 7, 1995; (2) Alcon's Motion to Compel dated August 14, 1995; and (3) Bausch & Lomb's Motion to Compel or Preclude Alcon with respect to the 'Advice of Counsel Defense' dated August 21, 1995. Oral argument was heard with respect to all three motions on Tuesday, September 5, 1995.

### Background

Bausch & Lomb ("B & L") is the assignee of the United States Patent No. 5,096,607 (referred to as "the 607 Patent"). The 607 Patent covers a one-step method for cleaning and disinfecting contact lenses. On May 9, 1990 Alcon filed its application for a patent on a one-step method [Patent No. 7,521,218 ("the 218 Patent") ]. On October 19, 1994, B & L commenced this action to enjoin Alcon from allegedly infringing the 607 Patent.

Alcon has counterclaimed and asserts that it invented the one-step method first, and thus, the 607 Patent is invalid under 35 U.S.C. § 102(g) [1].

### Discussion

### I. Bausch & Lomb's Motion to Compel

On August 7, 1995, B & L filed a motion to compel Alcon to (1) produce withheld documents, (2) fully respond to interrogatories, (3) answer requests for admission, and (4) reopen depositions so that witnesses can answer questions to which they were instructed by counsel not to respond.[2] Each of these discovery requests seeks information relating to Alcon's communications with its counsel during a prior unrelated law suit between Alcon and Allergan, one of its competitors (hereafter referred to as "the *Allergan* litigation"). Alcon has refused to disclose this information and has asserted its attorney-client privilege. In the alternative, B & L asks that the court preclude Alcon from asserting the defense that they were the first inventor of the subject matter at issue.

B & L claims that during a settlement conference [3] on March 22, 1994 between Alcon and B & L representatives in Fort Worth, Texas, Alcon's inside counsel, James A. Arno, advised B & L's inside counsel, Denis A. Polyn, "in substance", that Alcon had delayed its application on the one-step method so that it could not be used to contra-

---

1. 35 U.S.C. § 102(g) provides that a person shall be entitled to a patent unless "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed or concealed it."

Apparently, it is not uncommon for more than one inventor to file patent applications concerning the same subject matter. The patent goes to the first person to invent the subject matter, not the first person to file the patent application. Where more than one person file applications concerning the same subject matter, the United States Patent and Trademark Office (PTO) may institute a proceeding called an "interference" to determine who gets the patent rights. Alcon has represented that it has been advised that the PTO will institute an interference in this case "imminently". Alcon Memo at page 5. It is uncertain as to what effect, if any, the commencement of a PTO interference will have on the instant action.

2. B & L did not expressly specify the discovery requests to which it seeks to compel Alcon to

respond; nor did B & L address the merit of each particular request. However, it appears that B & L is seeking: (1) more complete responses to Interrogatories Nos. 6, 16, and 31; (2) more complete responses to Document Requests 65–76 and 80; (3) responses to Requests for Admission nos. 48–55 and 58; and (4) to reopen the deposition of Dr. Van Duzee to answer questions relating to his discussions with Alcon's attorneys concerning prior unrelated litigation between Alcon and another competitor.

3. Although B & L's papers describe the purpose of the meeting slightly differently—to determine if Alcon was interested in obtaining a license under Patent 607. [Exhibit G, Polyn Affidavit at para. 3]—during oral argument, B & L's counsel conceded that the meeting would be properly construed as a "settlement conference" even though this litigation had not yet commenced.

dict Alcon's position in the *Allergan* litigation. B & L asserts that this admission is important because a party loses any prior invention rights if it abandons or conceals the invention. 35 U.S.C. § 102(g). According to B & L, Alcon has improperly asserted the attorney-client privilege and Rule 408 to block discovery concerning that admission.

B & L asserts three arguments in support of its contention that the information its seeks by this motion is discoverable: (1) implicit waiver of the attorney-client privilege by assertion of the § 102 defense; (2) waiver of the attorney-client privilege by disclosure; and (3) improper assertion of Federal Rule of Evidence 408.

### A. *Implicit Waiver of Attorney–Client Privilege*

B & L argues that by asserting a § 102(g) defense, Alcon has implicitly waived any attorney-client privilege[4] as to the reasons why there was any delay in the filing of its 218 Patent application.

■ This appears to be a question of first impression. The § 102(g) defense is unlike the "advice of counsel" defense, the assertion of which is held to constitute an implicit waiver of the asserting party's attorney-client privilege. The "advice of counsel" defense allows a defendant to meet a willful infringement claim by establishing that no willful infringement took place because (a) the defendant attempted to determine if its conduct would infringe the plaintiff's patent by seeking legal advice and (b) defendant *relied* on its counsel's legal advice that its conduct would not infringe the plaintiff's patent or that the plaintiff's patent was invalid. The party asserting the "advice of counsel" defense implicitly waives its attorney-client privileges with respect to the attorney-client communications upon which the defense is based. *Gaull v. Wyeth Laboratories Inc.*, 687 F.Supp. 77 (S.D.N.Y.1988); *Buford v. Holladay*, 133 F.R.D. 487 (S.D.Miss.1990).

■ In the instant matter, as a rebuttal to Alcon's § 102(g) defense, B & L claims that Alcon deliberately delayed its application to protect its position in the *Allergan* litigation, thereby suppressing and concealing the product, and abandoning any patent rights it may have had in their invention. Because the information sought by B & L relates a factual issue as to whether or not Alcon delayed its application, and thus abandoned its patent rights, B & L argues that the attorney-client privilege can not be asserted to restrict discovery into the reasons for the delay.

B & L relies primarily on *Dow Chemical v. Atlantic Richfield*, 227 U.S.P.Q. 129 (E.D.Mich.1985) in which the assertion of certain affirmative defenses was held to be an implicit waiver of the attorney-client privilege. In that case, Dow sought compelled production of documents which ARCO withheld as attorney-client privileged. Dow argued that ARCO waived that privilege by asserting the affirmative defenses of reliance, estoppel, laches and acquiescence. In *Dow*, the court set forth the factors to be considered in determining whether there has been any implicit waiver of privilege:

1. assertion of the privilege was a result of some affirmative act, such as filing suit by the asserting party;

2. through the affirmative act, the asserting party put the protected information at issue by making it relevant to the case;

3. application of the privilege would deny the opposing party access to information vital to its defense.

Applying those criteria, the court in *Dow* held that the defendant had implicitly waived its attorney-client privilege. The facts of *Dow* are distinguishable from those in the instant matter. In *Dow*, the court determined that a waiver of the attorney client privilege existed because the defendant's affirmative defense was based upon the *defendant's reliance* on the advice of its counsel

---

4. B & L apparently concedes that the sought after information—communications between Alcon and its counsel regarding its litigation strategy during the Allergan litigation—would be subject to the Alcon's attorney-client privilege unless that privilege was waived. Thus, we will

not discuss the issues relating to whether Alcon has established its entitlement to assert the privilege. The court's analysis of the issues in this motion, as does the parties analysis, begins with the assumption that the requested information is subject to Alcon's attorney-client privilege.

that Dow's patent was invalid. The court noted:

> In its Amended Answer to the Complaint, ARCO stated that at the times the parties were in contact between 1976 and 1983 'Dow was repeatedly informed that ARCO considered the [subject] patent to be invalid, unenforceable and not infringed by ARCO.... In addition, Dow's acquiescence in 'oft repeated statements by ARCO that the patent was invalid and not infringed, reinforced ARCO's belief that Dow would not bring this suit.... *A review of the description ARCO provided ... makes it clear where those opinions came from: its patent attorneys and agents.*

*Dow,* 227 U.S.P.Q. at 137 (emphasis added).

In essence, *Dow* was similar to the more typical case where the "advice of counsel" defense is asserted. Conversely, in the instant case, Alcon is not relying on "advice of counsel" for its affirmative defense. Instead, Alcon's defense is based upon the assertion of the alleged *fact* that Alcon invented the one-step method before B & L—not that Alcon relied on the *advice of counsel* as to when to file its patent application. Alcon has the burden of proof on this issue. To establish its defense that Alcon actually invented the one-step method prior to B & L, however, Alcon need not discuss the *Allergan* litigation or the advice Alcon received from its counsel in connection with that litigation.

The privileged information which B & L seeks to obtain instead relates to whether or not Alcon "abandoned, delayed or concealed" its invention. B & L has the burden of proof on this issue. Although it is undisputed that discovery into the reasons for any delay in the filing of a patent application is appropriate, it does not follow that such discovery necessarily requires or allows intrusion into the attorney-client privilege. B & L has not supplied any authority for its proposition that the assertion of a § 102(g) defense automatically constitutes a waiver of the attorney-client privilege. Similarly, the Court has found none.

Intrusion into attorney-client privileged information is not inherently necessary to rebut a § 102(g) defense. A plaintiff could establish that a defendant asserting a § 102(g) defense "abandoned, suppressed or concealed" the invention by information obtained through the traditional discovery mechanisms without intruding into the attorney-client privilege. Based on such information, a plaintiff may establish from the defendant's own documents, deposition testimony, and admissions that the defendant had developed the invention to a point where it could have filed for a patent application long before it did and that the defendant either abandoned, suppressed or concealed the invention in failing to do so. Direct evidence of abandonment, suppression and concealment may also be found through these same traditional discovery mechanisms.

Unlike the *Dow* case, here it is B & L, and not Alcon, that seeks to rely upon the attorney-client privileged information. The fact that the privileged information would be helpful to B & L in combating Alcon's defense does not mean that Alcon placed this privileged information "at issue" and such relevance is not sufficient, in and of itself, to vitiate the attorney-client privilege.

Third Circuit opinion in *Rhone–Poulenc Rorer Inc. v. Home Indemnity Company et al.,* 32 F.3d 851 (3d Cir.1994) is instructive on this issue. There, the court stated:

> Advice [of counsel] is not in issue merely because it is relevant.... The Advice of counsel is placed in issue where the client asserts a claim or defense, *and attempts to prove that claim or defense by disclosing or describing an attorney client communication.*
>
> Thus, in a patent suit, where an infringer is alleged to have acted willfully, the advice of the infringer's lawyer may be relevant to the question of whether the infringer acted with a willful state of mind. *However, the advice of the infringer's counsel is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice.* ... (Citations omitted).
>
> ... Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged,

and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even to go to the heart of an issue.

As the attorney client privilege is intended to assure a client that he or she can consult with counsel in confidence, finding that confidentiality may be waived depending on the relevance undermines the interest to be served.

*Rhone–Poulenc,* 32 F.3d at 863–64 (emphasis added).

Similarly, *United States v. White,* 887 F.2d 267 (D.C.Cir.1989) is also instructive. In *White,* the Court held that the district court erred in finding waiver of the attorney-client privilege because defendant denied criminal intent in a bribery prosecution. The Court distinguished such a defense from a "reliance-on-advice-of-counsel" defense, stating:

The district court apparently equated [the defendant's] denial of criminal intent with a reliance-on-advice-of-counsel defense, which would have waived the privilege. . . . To be acquitted for lack of criminal intent, [the defendant] did not need to introduce any evidence of communications to and from [his attorney], and he did not do so.

*White,* 887 F.2d at 270.

As noted above, in asserting the § 102(g) defense, Alcon has not attempted to utilize an attorney-client privileged communication to "prove" its defense. Nor is this a case in which the assertion of the attorney-client privilege would leave B & L unable to respond to Alcon's defense. Thus, the assertion of a § 102(g) defense, in and of itself, does not waive Alcon's attorney-client privilege.

Based on the above, compelled production of the privileged information on this ground is not warranted.

### B. *Waiver of Privilege by Disclosure*

B & L also argues that Alcon has made a "complete and total waiver of the attorney-client privilege with respect to the filing of its '218 Patent application" because of the alleged statements by Alcon's counsel at the March 22, 1994 meeting.[5]

The attorney-client privilege is fundamental to the judicial process and, indeed, has been called "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev.1961). The critical purpose of the privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. *Id.* Because the attorney-client privilege, like all other evidentiary privileges, impinges on the production of relevant evidence, and thus functions as an obstacle to the fact-finder in the pursuit of truth, the Supreme Court has held that such privileges should not be expansively construed. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974). Nevertheless, the attorney-client privilege serves a critical function in the operation of the law and may not be disregarded lightly. *Upjohn,* 449 U.S. at 389, 101 S.Ct. at 682; *Allen v. West Point–Pepperell Inc.,* 848 F.Supp. 423 (S.D.N.Y. 1994).

---

5. During oral argument, B & L's counsel asserted that B & L had an additional basis for arguing that Alcon had waived the attorney-client privilege on this issue—the fact that Greg Brown, Alcon's patent counsel, testified at a deposition on August 17, 1995 and answered questions relating to the reasons for Alcon's delay in filing its patent application.

This argument is not raised in any of B & L's motion papers, including its August 30, 1995 Reply memorandum. Moreover, B & L has not identified any specific testimony of Mr. Brown in support this contention. The mere fact that Mr. Brown testified and answered questions relating to the reasons for any delay in filing Alcon's patent application and whether or not the *Allergan* litigation was a factor in the timing of Alcon's filing, does not constitute a waiver of attorney-client privilege. The determination of whether a waiver was effected in such circumstances depends upon the specific language of the question posed and the testimony given. As discussed more fully below, the facts relating to any delay in the filing of Alcon's patent application or the role of the Allergan litigation in the timing of the filing are not privileged information. It is the communications between counsel and client regarding those matters that is subject to the privilege asserted by Alcon.

Moreover, pretrial disclosures have been found to waive the privilege only where the party discloses the substance of such privileged communication. *White*, 887 F.2d at 271. Consistent with the Supreme Court's mandate to review such waiver claims on a painstaking, case by case basis (*Allen*, 848 F.2d at 426, citing *Upjohn*, 449 U.S. at 396, 101 S.Ct. at 686), in determining whether a waiver of the privilege has taken place under the circumstances presented in this case, it is necessary to review the exact language which is alleged to form the waiver.

With these principals in mind, a review of the allegations in the Polyn affidavit reveals that they are insufficient to establish that a waiver of the attorney-client privilege occurred. As noted above, it is undisputed that B & L is entitled to discovery into the reasons for Alcon's delay, if any, in filing its patent application and whether or not the *Allergan* litigation contributed to any such delay. B & L's motion papers reveal that Alcon has already responded to many of B & L's discovery requests on these factual issues. It is the communications between Alcon and its counsel with respect to the *Allergan* litigation that Alcon asserts are privileged.

With respect to the March 22, 1994 meeting, Polyn testifies in his affidavit (attached as Exhibit G to B & L's Motion to Compel) that:

4. At this meeting Alcon raised the issue of who was first to invent the subject matter one-step cleaning/disinfecting product. Mr. Arno explained that Alcon had made this invention years before Bausch & Lomb.

5. Mr. Arno also stated in substance that Alcon had received advice of counsel relating to filing a patent application on a one-step cleaning/disinfecting product (the Alcon patent application) during an earlier patent litigation. It is now my understanding that the earlier patent litigation was Alcon v. Allergan (docket Number 4–

88–333–E) ("Allergan litigation") which related to a patent on a one-step method for simultaneous cleaning and disinfecting contact lenses.

6. Mr. Arno also stated in substance that, although Alcon believed it had made its invention well before the litigation, counsel advised Alcon that filing this patent application during the Allergan litigation would be inconsistent with one or more positions it had taken during that litigation.

7. Mr. Arno also stated in substance that Alcon then decided to postpone or delay the filing of the Alcon patent application.

Once again this instant case presents a novel issue. Unlike most cases in which the court is called upon to determine whether or not the disclosure of certain information constitutes a waiver of the attorney-client privilege, in the instant matter there is a question as to the content of the information disclosed. Alcon denies that any comments made by Arno at the March 22, 1994 meeting constitute a waiver of the attorney-client privilege. Alcon also denies that the language set forth in the Polyn affidavit is an accurate reflection of the language used by Arno and argues that the Polyn Affidavit does not even purport to state the exact language used by Arno which B & L claims to have constituted the alleged waiver of the attorney-client privilege. (Alcon Memorandum in Opposition to Motion to Compel at pages 6–7.)[6] Neither party has represented that the conversation was recorded, reduced in writing, or that any contemporaneous notes reflecting the conversation exist. Similarly, neither party has represented that any other individual participated in the conversation. Thus, an evidentiary hearing is not likely to expand the relevant information necessary for the determination of the instant motion.

Of the relevant paragraphs from the Affidavit quoted above, only paragraph 6 comes close to describing the disclosure of the substance of communications between Alcon and its counsel.[7] However, this allegation—

6. During oral argument, Alcon's counsel represented that Arno has not submitted an affidavit in opposition to the instant motion because he can not recall the exact language he used in discussing the Allergan case at the March 22, 1994 meeting.

7. Paragraph 4 of the Polyn Affidavit alleges only that Alcon stated that it invented the one-step

which is represented only to be a paraphrase approximating Arno's comments "in substance"—is too attenuated to constitute a waiver of the attorney-client privilege. It is uncertain how much poetic license is reserved in the "in substance" disclaimer. This is significant where, as here, by reshuffling three or four words, the salient information contained in this allegation could easily be restated in such a way as to remove any question that the statement could be considered as a waiver of the attorney-client privilege.

Moreover, even as stated in the Polyn affidavit, given the vague and inconclusive phrasing of the allegation and the non-privileged nature of the underlying tacts revealed therein, it is uncertain as to whether "the substance" of any privileged attorney-client communication was disclosed. Once again, the *White* case is instructive. In *White*, during a preliminary investigation, the defendant (presumably to justify his conduct) stated that his attorneys "had thoroughly reviewed the decision to employ [a co-defendant] after ... looking at the matter from nine different ways." The Court held that a general assertion lacking substantive content that one's attorney has examined a matter is not sufficient to waive the attorney-client privilege and concluded that:

> Where a defendant neither reveals substantive information, nor prejudices the [opponent's] case, nor misleads the court

by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver."

*White,* 887 F.2d at 271.

Given the importance of the attorney-client privilege and its function in our judicial system, the court concludes that it is improper to find a waiver of that privilege based upon "in substance" paraphrasing or other uncertain approximations of oral statements made by an opposing counsel.[8]

Based on the above, the court finds that Alcon has not waived its attorney-client privilege relating to its communications with its counsel in connection with the *Allergan* litigation.

### C. The Assertion of Rule 408

B & L claims that Alcon improperly asserted Federal Rule of Evidence Rule 408[9] in response to its various attempts to obtain discovery with respect to the alleged statements made at the March 22, 1994 meeting. Inasmuch as the court has determined that Alcon has not waived its attorney-client privilege with respect to its communications with its counsel relating to the *Allergan* litigation, this court need not resolve this question.

The parties agree that B & L is properly entitled to discovery into the reasons for Alcon's delay, if any, in filing the 218 Patent application. Indeed, as noted above, the rec-

---

method prior to B & L. This is nothing more than a restatement of Alcon's affirmative defense. Paragraph 5 alleges only that Arno received advice from counsel relating to the filing of its patent application. A statement that a party received advice from counsel is not a disclosure of that advice. Paragraph 7 merely describes action taken by Alcon. Without inferences which are not present in the statement itself, this statement, if in fact made, does not disclose the substance of any privileged communication.

8. Although it is not a basis for the court's determination, such a result is particularly appropriate in a case such as this where the alleged statements were made by defendant's counsel during a settlement conference in which the parties expressly agreed that the negotiations and discussions were conducted on a "without prejudice" basis. See August 11, 1994 Letter from Polyn to Brown, attached as Exhibit D to Alcon's Memorandum in Opposition to the Motion to Compel.

9. Rule 408 provides that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to wither validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct of statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

ord reflects that Alcon has already provided some of this information to B & L. Inasmuch as Alcon is not asserting Rule 408 to preclude discovery of non-privileged information regarding the delay issue, the question is moot.

In sum, for the reasons stated above, B & L's motion to compel is denied.

## II. Alcon's Motion to Compel

Alcon seeks to compel B & L to provide more complete responses to (1) Interrogatories 1, 5, 8–12, 24 and 25; (2) Requests to Admit Nos. 1–4, 8–13, and 26; and (3) withdraw its General Objections F and I which restrict the time period and subject matter with respect to which B & L will provide discovery.

The parties met on August 22, 1995 and resolved some of the issues raised in Alcon's motion. According to Alcon's Reply Memo (at page 4), the parties have agreed to the following:

*B & L will supplement its response to Subpart B of Interrogatories 8–11 to provide the period of time and location where the products were stored and offered for sale;

*B & L will supplement its response to Subparts C and D of Interrogatories 8–11 to provide the number of units manufactured and sold;

*B & L will revise its August 14, 1995 response to Subparts E and F of Interrogatories 8, 10, and 11 to respond to each separately;

*B & L will supplement its response to Subparts B through F of Interrogatory 12 to provide the information requested;

*B & L will supplement its response to Interrogatory 24 to reflect Mr. Pace's first awareness of the information sought; and

*B & L will supplement its response to Interrogatory 25 to specify that the information Alcon seeks can be derived or ascertained from documents produced to Alcon.

During oral argument, Alcon represented that based upon its discussions with B & L it was prepared to withdraw its motion with respect to the following discovery requests:

Interrogatories 8–12 and 25; Requests to Admit 8–13 and 26.

I will address those issues which appear to remain in dispute.

### Interrogatory No.1 subparts (B) and (C)

In Interrogatory No.1 subparts (B) and (C) Alcon seeks discovery of B & L's infringement contentions by asking B & L to identify any documents supporting B & L's infringement claims. Subparts (B) and (C) ask B & L to place brackets around the portions of those documents containing elements of B & L's infringement claim and label them with a reference symbol.

B & L argues that this request is overly burdensome in that it would require B & L to review all of Alcon's documents (which number approximately 250,000) to respond and that it impermissibly imposes a duty on B & L to perform work on behalf of Alcon. B & L also argues that such a request is a trap in that if it fails to identify a document in response to such a request it may be precluded from using that document at trial. Alcon argues that B & L's claims are exaggerated in that the interrogatory merely asks B & L to identify those documents which support its infringement claims and that to date B & L has identified only 12 documents.

The court finds that Alcon is entitled to more specific information than B & L has yet provided with respect to its contentions of infringement. See *Refac Intern., Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247 (Fed.Cir. 1990); *Loctite Corporation v. Fel–Pro, Inc.*, 667 F.2d 577 (7th Cir.1981). B & L's arguments regarding the burden of such a request are unavailing. B & L commenced this action, and having done so, B & L is required to comply with reasonable discovery requests. A defendant charged with infringement of a patent is entitled to use discovery mechanisms to determine the plaintiff's contentions as to each element of the claim. Given the nature of the claim, the amounts at stake and the resources of the respective parties, Alcon's request that B & L identity each document that supports B & L's infringement claim is not unreasonable. B & L's fears that such a request constitutes a

trap are also misplaced. B & L can supplement its interrogatory responses prior to trial if necessary.[10]

Although Alcon is entitled to complete information on the nature of B & L's infringement contentions, that does not necessarily mean that it must be in the form that Alcon has requested. During oral argument, B & L's counsel suggested that as an alternative to marking-up the documents as requested by Alcon, B & L would provide Alcon with a "claim-chart" which discusses each the elements of B & L infringement claims. As long as any such "claim-chart" references the documents (including specific reference to page or item numbers) B & L contends support the various elements, such a format is sufficient.

### Interrogatory No. 5.

Alcon's Interrogatory No. 5 seeks information on the factual and legal basis for B & L's claim that Alcon "contributed to the infringement" of the patent and induced others to infringe the patent. During the discovery conference on August 22, 1995 B & L advised Alcon that it would supplement its response to this interrogatory which would resolve many of the deficiencies claimed by Alcon.

However, B & L continues to refuse to identify any person who is alleged to directly infringe the patent. Apparently, the actual infringement of B & L's patent occurs when one or more of Alcon's products are used in a certain manner. By this interrogatory, Alcon seeks the names of any individual users who have actually used the product or products in that manner.

Taken literally, this interrogatory would require B & L to list every person who buys the Alcon products and uses them in an infringing manner. Such a task is impossible. During oral argument, counsel for B & L suggested that it will consider relying solely upon Alcon's brochures to establish this element of its claims. If B & L determines to take such an approach, the information requested in this portion of Interrogatory No. 5 would be of no relevance, and no

further response would be required. If B & L determines not to limit its proof in this regard (or some other equivalent manner), B & L is directed to identify any and all persons known to it who have used the Alcon products in an infringing manner.

█ B & L also refuses to identify any of its own employees who might have knowledge of the factual and legal bases for B & L's assertion of infringement. B & L objection on the grounds that the interrogatory asks for the identity of B & L employees with knowledge of *both* the factual *and legal* bases, and that the only such person is its counsel Dennis Polyn. Alcon argues that even if B & L interpreted the interrogatory in such a literal manner, that there would still have to be some other B & L employees with such knowledge.

Although the interrogatory literally asks B & L to identify "all persons with knowledge about the factual *and* the legal bases" for B & L's claims, in its July 23, 1995 letter to B & L's counsel (attached as Exhibit 4 to Alcon's Motion to Compel), Alcon clarified that Alcon wanted the names of any B & L employee with knowledge about the factual *or* legal bases of B & L claims or at least the names of the individuals at B & L who participated in or were responsible for the decision to bring this lawsuit. B & L's rigid interpretation, although grammatically correct, is not consistent with the appropriate spirit of co-operation for discovery purposes.

B & L is hereby directed to supplement its response to Interrogatory No. 5 to identify the B & L employees who possess knowledge about the factual bases of its claims, including those persons who participated in or were responsible for the decision to bring this lawsuit.

### Interrogatory No. 24

█ Interrogatory No. 24 seeks information relating to: (1) the identity of individuals associated with the B & L patents and the February 21, 1995 Supplemental Information Disclosure Statement filed by B & L and (2) when such individuals became aware of the

---

10. This does not mean that B & L can wait until just prior to trial to supplement its interrogatory answer in response to the instant motion. Pursuant to this order B & L is directed to make a good faith effort to identify all responsive documents within 20 days from the date of this order.

information in the February 21, 1995 Supplemental information Disclosure Statement and when they were first aware of sales of various B & L products. B & L objects to this interrogatory on the grounds that "it requires [B & L] to form a legal conclusion of the meaning and scope of 37 C.F.R. § 1.56" and that the interrogatory seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Neither objection has merit.

Alcon's reference to 37 C.F.R. § 1.56 does not require B & L to engage a team of legal analysts to discern the meaning of some ambiguous phrase used in the context of some amorphous legislation. A common sense reading of Alcon's reference to 35 C.F.R. § 1.56 instead works merely to incorporate subdivision (c) of that provision which defines the phase as follows:

> (c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:
>
> (1) Each inventor named in the application;
>
> (2) Each attorney or agent who prepares or prosecutes the application; and
>
> (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

Alcon's reference to this provision places B & L under no more of an onerous duty than had Alcon expressly included the language in its interrogatory.

■ B & L's objection based on irrelevance is similarly unpersuasive. This interrogatory falls within the broad scope of what is to be considered "relevant" for discovery purposes. The information sought in this interrogatory is arguably relevant to the validity of B & L's patents; any damages suffered by B & L; and Alcon's counterclaims.

B & L is to provide a more complete response to Interrogatory *No.* 24, including the information requested with respect to each individual associated with the filing and prosecution of the patent applications that led to the '607 Patent.

**Requests to Admit Nos. 3 and 4.**

■ In Requests to Admit Nos. 3 and 4 Alcon seeks to have B & L admit to interpretations or summaries of portions of certain documents. Requests which seek admissions to interpretations of documents are improper. *Buff Corp. v. Marcelle,* 20 F.R.D. 139 (E.D.N.Y.1957); *Pittsburgh Hotels Ass'n, Inc. v. Urban Redevelopment Authority of Pittsburgh,* 29 F.R.D. 512 (W.D.Pa.1962); *Anderson v. United Air Lines,* 49 F.R.D. 144 (S.D.N.Y.1969); *Naxon Telesign Cop. v. GTE Information Systems Inc.,* 30 F.R.Serv.2d 1286 (N.D.Ill.1980).

Thus, the court finds that B & L's responses to Requests to Admit Nos. 3 and 4 are sufficient.

**General Objection F**

In General Objection F, B & L objected to "providing information covering the period from March 17, 1992, on the grounds that such requests are overbroad and unduly burdensome in that information from that date is not relevant to or not reasonably calculated to lead to the discoverability of admissible evidence regarding the validity or enforceability of the '607 patent-in-suit."

In its Brief in Support of the Motion to Compel (at page 23), Alcon claims that information covering this period "is critical to Alcon's ability to (1) contest [B & L's] theories of commercial success and damages; and (2) ascertain its damages due to [B & L's] trade secret misappropriation and unfair competition."

In prior correspondence and at the August 22, 1995 discovery conference, B & L represented that it had not withheld documents dated after March 17, 1992 relating to commercial success and damage issues and that its General Objections would be revised to reflect this modification. (B & L's Memorandum in Opposition to Motion to Compel at page 15; Alcon's Reply Memorandum at page 4–5). Having made such a representation, B & L, of course, should be mindful that it may be precluded at trial from using documents relating to these matters which have not been produced.

Alcon has failed to articulate any sufficient remaining basis to strike B & L's General Objection F or to compel further production of documents.

### General Objection I

In General Objection I B & L objected to producing information and documents involving solutions other than those containing a *combination* of a proteolytic enzyme and an antimicrobial agent. B & L argues that this request is irrelevant and overly burdensome inasmuch as this patent action concerns a one-step cleaning and disinfecting method in which an enzymatic cleaner and a chemical disinfectant are combined. B & L claims that to comply with this request it would have to search through hundreds of thousands of documents which would have marginal, if any, relevance.

Alcon argues that information concerning individual B & L solutions that are or could have been employed to practice the subject matter patented process are discoverable.

During oral argument, B & L represented that it has produced all documents which discuss the combination of an enzymatic agent and a chemical disinfectant—irrespective of whether those documents were relating to the development of either solely the enzyme or the disinfectant. Again, having made such a representation B & L may be precluded at trial from using documents relating to these matters which have not been produced.

In light of the above, Alcon's motion to compel on this ground is denied.

### III. Bausch and Lomb's Motion to Compel or Preclude with respect to Any "Advice of Counsel" Defense

By this motion B & L seeks to compel production of documents "embodying, referring or relating to opinions of counsel with respect to the validity, enforceability or infringement by Alcon of the 607 Patent, and to permit deposition testimony concerning the subject matter of such documents and Alcon's defense to B & L's willful infringement charge to the effect that Alcon relied upon the advice of its counsel, or alternatively, to preclude Alcon from relying on opinions of counsel to rebut B & L's willful infringement charge."

There is no dispute that B & L would be entitled to additional discovery, including some intrusion into what would otherwise be information protected by the attorney-client privilege, should Alcon assert an advice of counsel defense.

Alcon claims that the instant motion is premature in that Alcon has not yet determined whether or not it will assert an "advice of counsel" defense. Alcon also argues that its ability to make such a determination has been hampered by B & L's lack of response to discovery requests concerning B & L's willful infringement claims.

On July 20, 1995, this issue was raised during a conference with Magistrate Judge Maxwell; at that time, Alcon stated that based on the information provided by B & L in its interrogatory response concerning the willful infringement claim, Alcon did not intend to rely on any opinions of counsel [11]. Alcon reserved the right to reconsider this if B & L supplemented its response to Alcon's interrogatory. The parties agree that Judge Maxwell held that if B & L supplemented its interrogatory answer Alcon would again be required to advise B & L if it intended to rely on an advice of counsel defense.

B & L supplemented its interrogatory response on August 9, 1995 and demanded that Alcon advise B & L by 11:00am Monday, August 14 [12] as to whether or not it intended to rely on an advice of counsel defense. Alcon responded that it will advise B & L of whether or not it will assert an advice of counsel defense on September 22, 1995. During oral argument, Alcon's counsel repre-

---

11. It is undisputed that the requested discovery would not be appropriate if Alcon does not rely on an advice of counsel defense to rebut the willful infringement claim.

12. This unilaterally imposed time constraint gave Alcon two business days to review the supplemental information and make a determination. B & L does not state why it was necessary to attempt to subject Alcon to such an unreasonable time constraint or under what authority it could do so.

sented that September 22 was chosen to allow B & L at least one month to obtain additional discovery should Alcon decide to assert the defense. Alcon's counsel also represented that if it determined to assert the advice of counsel defense, it would produce to B & L—on September 22—the written counsel's statements upon which they would rely.

In light of the above, the court finds that B & L's instant motion is premature.

The scheduling order in this case requires discovery to be completed by October 23, 1995. The court is not inclined to extend that date at this time. Thus, the following schedule shall apply with respect to the advice of counsel issue:

1. Alcon shall advise B & L of whether or not it will assert the advice of counsel defense on or before September 22, 1995; if Alcon determines to assert the defense, Alcon shall produce to B & L any written counsel's statements or opinions upon which the defense is based simultaneously with the notification of its intention to assert the defense;

2. B & L shall serve and deliver to Alcon any request for additional discovery on the advice of counsel issue on or before September 29, 1995;

3. Alcon shall respond to any such additional discovery requests on or before October 13, 1995 [13];

4. Any motion to compel discovery with respect to this issue should be filed on or before October 20, 1995.

### Conclusion

Based on the above, it is hereby Ordered that:

1. B & L's Motion to Compel dated August 7, 1995 is denied;

2. Alcon's Motion to Compel is granted in part and denied in part, consistent with the discussion set forth above; unless otherwise directed, all discovery ordered herein shall be produced within 20 days from the date of this Memorandum & Order; and

13. With respect to deposition notices, it is sufficient that the depositions be scheduled within the

3. B & L's Motion to Compel with respect to the Advice of Counsel Defense is denied as premature.

So Ordered.

### MEMORANDUM & DECISION ON RECONSIDERATION

Currently before the Court is Bausch & Lomb's ("B & L") motion seeking reconsideration of the Court's September 18, 1995 Memorandum and Order denying B & L's motion to compel Alcon to produce certain attorney-client privileged information. B & L does not state the Federal Rule of Civil Procedure (FRCP) or other authority upon which it brings the instant motion. Similarly, Alcon does not challenge the procedural propriety of B & L's motion. Thus, the Court will treat the instant motion as seeking reconsideration based upon the Court's inherent jurisdiction to review its prior orders.

For the reasons set forth below, the Court vacates that part of its September 18, 1995 Order which held that Alcon did not waive its attorney-client privilege based on the disclosure made by Alcon's in-house counsel during the March 22, 1994 settlement conference. As discussed more fully below, based on the newly presented evidence, the Court finds that the statements made by Alcon's in-house counsel constitute disclosure of at least part of the substance of a privileged communication between Alcon and its litigation counsel, and thus, operates to effect a waiver of Alcon's attorney-client privilege with respect to communications between Alcon and its litigation counsel relating to the timing of the filing of its patent application.

The remainder of the September 113, 1995 Order remains in effect.

### *Discussion*

Without restating the facts in detail, in its original motion B & L claimed that during a settlement conference Alcon's in-house counsel (Dr. Arno) advised B & L's in-house counsel (Mr. Polyn), "in substance", that Alcon had delayed its application on the one-

discovery cut-off period.

step method so that it could not be used to contradict Alcon's position in an unrelated litigation between Alcon and Allergan ("the *Allergan* litigation"). B & L asserted that the information is discoverable because (1) Alcon's assertion of a defense pursuant to 35 U.S.C. § 102(g) in the instant case constituted an implicit waiver of the attorney-client privilege with respect to any attorney-client communications relevant to that defense; and (2) the statements made by Alcon's in-house counsel constituted waiver of the attorney-client privilege [1] by disclosure.

### A. *Implicit Waiver of Attorney–Client Privilege*

In its motion for reconsideration, B & L asks the Court to reconsider its rejection of B & L's argument that by asserting a § 102(g) defense, Alcon has "implicitly" waived any privilege. In support of this request B & L cites *THK America v. NSK Co. Ltd.* 157 F.R.D. 637, 33 U.S.P.Q.2d 1248 (N.D.Ill.1993), which held that where a party asserts defenses of laches and estoppel:

"[I]f a defense of estoppel may be defeated by showing that the party asserting the defense actually relied not on plaintiff's conduct but on its own lawyers' advice, the party claiming estoppel has put attorney-client communications in issue, and fundamental fairness dictates that the plaintiff be permitted to examine communications relevant to the estoppel question."

As discussed in the Court's September 18, 1995 Order, such estoppel cases are not analogous to the instant case wherein Alcon's § 102(g) defense is based upon its claim that it first invented the product (or process) which is the subject matter of this dispute. In an estoppel context, there is more of a nexus between the issues relating to estoppel and the attorney-client communications about the enforceability of the subject matter patent. With respect to a § 102(g) defense, Alcon's communications with its counsel would have no inherent relationship to the defense absent the pure happenstance of the existence of the Allergan litigation.

Indeed, during oral argument, B & L's counsel argued that it did not contend that the assertion of a § 102(g) defense would constitute a waiver of attorney-client information in every instance, but that it did so here because Alcon asserted the defense knowing that it had conversations with counsel regarding the delay of the filing of its patent application due to the *Allergan* litigation. Such a position is inconsistent with the argument that the mere assertion of the § 102(g) defense constitutes an "implicit" waiver of the attorney-client privilege.

Moreover, a full reading of the *THK* case reveals that it is perhaps just a restatement of the typical estoppel\reliance-on-counsel defense case. After the quote cited above by B & L, the Court in THK went on to explain:

In short, NSK asserts that it relied on THK's delay [and inaction]; THK says that NSK relied on something else. What NSK is arguing here is that THK is not entitled to prove what NSK actually relied on, even though the court should be entitled to infer the reliance from NSK's own proof. The unfairness of NSK's position is manifest.

Accordingly, it is now a widely accepted principle that evidence of reliance on an opinion of counsel that a particular patent is invalid or not infringed is relevant to the question of estoppel.... The determination of such reliance necessarily turns upon the subjective intention of the defendants and, therefore, demands investigation into attorney-client communications where such an intention would be manifested.

*THK,* 33 USPQ2d at 1259, 157 F.R.D. at 650.

Here, the asserted defense does not turn on the subjective intention of the defendant which would be manifested in its communications with counsel. Here, the defense is *objective*—did Alcon invent the product (or process) before B & L. In the estoppel case, the scope of the waiver is apparent. If the assertion of a § 102(g) defense implicitly

---

1. as noted in the Court's September 18, 1995 Memorandum & Order, B & L concedes that the sought after information—communications between Alcon and its counsel regarding its litiga-

tion strategy during the Allergan litigation— would be subject to the Alcon's attorney-client privilege unless that privilege was waived.

waived the attorney-client privilege, what would be the scope of the waiver? Absent the alleged statements by Alcon's in-house counsel, B & L has failed to present any evidence upon which it would have reason to think that there was a connection between Alcon's patent application and the *Allergan* litigation. If the waiver is implicit, does it extend to all other Litigation and other matters that might have been pending at that time? Finally, unlike the estoppel situation, there is no precedent finding that the assertion of a § 102(g) defense implicitly waives the attorney-client privilege.

Finally, because Alcon's § 102(g) defense is based upon its assertion that it invented the product (or process) before B & L, and not that it acted in reliance upon some attorney-client communication, denial of access to attorney-client privilege does not leave B & L unable to respond to the defense or result in "manifest unfairness".

Based on the above, the Court finds no reason to disturb its determination, as set forth in its September 18, 1996 Order, that by asserting the § 102(g) defense Alcon did not implicitly waive its attorney-client privilege.

## B. *Waiver by Disclosure*

B & L also seeks reconsideration of the Court's determination that the alleged comments by Dr. Arno did not constitute a waiver of Alcon's attorney-client privilege. In the September 18, 1995 Order, the Court determined that Mr. Polyn's allegations—which were the sole evidence presented in support of B & L's waiver claim—as to the statements made by Dr. Arno at the March 22, 1994 meeting were too vague and inconclusive to support a finding that the attorney-client privilege had been waived. The Court also noted that "neither party [had] represented that any other individual participated in the conversation."

In support of the instant motion, B & L has submitted a supplemental affidavit from Mr. Polyn which attempts to clarify and strengthen the statements made in his previous affidavit. B & L also submits deposition testimony from various other individuals who were, in fact, present at the March 22, 1994 meeting and who participated in the discussion between Mr. Polyn and Dr. Arno.

In his supplemental affidavit, Mr. Polyn states that:

3. When I used the expression "in substance" in my prior affidavit, I did not mean I was uncertain about what Mr. Dr. Arno said ... or that I was drawing inferences from what he said. I meant only that I could not state with certainty the exact words he used. I am certain about the substance of what he said.

4. At that meeting, Mr. Dr. Arno said unequivocally that Alcon had been advised by its outside counsel in the earlier litigation not to file a patent application on a one-step process for cleaning and disinfecting contact lenses using a combination of enzyme and disinfectant because it would be inconsistent with Alcon's litigation strategy. Mr. Dr. Arno unequivocally said that Alcon followed that advice and that was the reason it delayed filing its patent application.

In further support of the instant application, B & L contends that *Alcon's* former counsel, Julie Cheng, has given deposition testimony which affirms that Dr. Arno made such a disclosure. At her September 22, 1995 deposition, the following pertinent testimony was given[2]:

Q: During that meeting, did Mr. Dr. Arno tell anyone at Bausch & Lomb anything about any advice of counsel Alcon had received relating to the filing of its patent application on a one-step cleaning and disinfecting product?

. . .

A: Yes

. . .

Q: Did Dr. Arno state at that meeting that counsel in a prior litigation advised Alcon that filing its patent application ...

---

**2.** Portions of the transcripts of Ms. Cheng's September 22, 1995 and October 17, 1995 deposition testimony are attached as Exhibit 2 to B & L's motion papers.

would be inconsistent with one or more positions it had taken in that litigation?

. . .

Attorney directs witness not to respond.

. . .

Q: Could you answer that question?

A: Yes.

Q: Did Dr. Arno state at that meeting anything about Alcon deciding to postpone or delay the filing of its . . . patent application?

. . .

Attorney objection and direction not to answer.

Q: Could you answer that?

A: No.

Q: Why not?

A: I don't recall.

At the October 17, 1995 deposition of Dr. Cheng, the following testimony was given:

Q: Do you recall him referring to a prior litigation?

A: Yes

Q: What did he say?

A: I don't remember what he actually said.

Q: Do you have an understanding of anything about what he said?

A: I have some understanding.

Q: Can you tell me what that is?

A: I believe he mentioned that counsel had advised him that, during the pendency of that case, it might be inadvisable to file the Rosenthal case.[3]

B & L also argues that Dr. Arno not only has failed to submit an affidavit in opposition to the instant motion, denying that he made the alleged remarks, but that he failed to directly deny making the statements when directly examined about them during his deposition. At his deposition, Dr. Arno testified as follows [4]:

Q: Dr. Arno, at the March 22, 1994 meeting, did you mention advice of counsel?

. . .

A: Mr. Reed, I am aware of your heightened interest in this. And to the best of my recollection this utterance was not made by me. I want to tell you—let's just have a narrative right here. I think Denis Polyn heard what he wanted to hear.

Q: Are you done, sir?

A: I have heard his—I have read his account of this meeting and I absolutely disagree with it. I have read where he said . . . so you have abandoned, suppressed and concealed the invention, whereupon Dr. Arno stood mute and made no response and apparently agreed with me. What an absurd thing to say. What absolute absurdity is this. Absolutely untrue.

Q: Dr. Arno, at the March 22nd, 1994 meeting, did you say in the presence of Bausch & Lomb representatives that counsel had advised you that during the pendency of another case, it might be inadvisable to file the Rosenthal case?

A: Not to my knowledge.

. . .

Q: . . . do you recall Mr. Polyn saying to you, Dr. Arno, had admitted to him, Mr. Polyn, that Alcon had abandoned, suppressed or concealed the invention?

---

3. B & L's motion papers and portions of the various deposition transcripts suggest that "the Rosenthal case" is a reference to the Alcon patent application which relates to the underlying dispute in this action. B & L Memorandum in Support of Motion for Reconsideration at page 8. Alcon does not, at least directly, deny that "the Rosenthal case" refers to the relevant patent application. Alcon contends, however, that '[a]lthough Ms. Cheng testified about a "Rosenthal case", she could not recall what it was. . . . Ms. Cheng's testimony does nothing to confirm Mr. Polyn's so-called recollection that Dr. Arno said anything about any reasons that Alcon delayed filing 'a patent application on a one-step process for cleaning and disinfecting contact lenses using a combination of enzyme and disinfectant.' Alcon Memorandum in Opposition to Motion to Reconsider at page 4, quoting 9/28/95 Polyn Affidavit. Absent a refutation that the "Rosenthal case" refers to the patent application which relates to the underlying dispute in this action, the Court must assume they are one and the same.

4. A portion of the transcript of Dr. Arno's deposition testimony is attached as Exhibit 4 to B & L's motion papers.

A:[5] He alleges that he made this statement to me and then characterizes my response. I'm saying that I have absolutely no recollection of this at all. Further, I think it is absolutely absurd for anyone to believe that I would allow Denis Polyn to come and say this to me and utter no response. It is absolutely absurd. Also, you should know—remember Mr. Brown's testimony that in fact we did file the Rosenthal patent application during the pendency of this litigation with Allergan.

. . .

Q: Did you refer to Mr. Sease at that meeting?

A: I have no recollection of uttering Sease's name at that meeting.

Q: Did you refer to any outside counsel at that meeting?

A: To the best of my recollection, I did not.

Dr. Barry F. Van Duzee was also at the March 22, 1994 meeting. At his deposition, upon advice of counsel, Dr. Van Duzee refused to answer questions regarding whether he had discussions with Alcon's attorneys to the effect that Alcon should delay its application because of the Allergan litigation. However, Dr. Van Duzee did respond to the question: "Dr. Van Duzee, are you aware of any events which delayed the filing of the Alcon patent applications . . . ?" His response was: "I don't recall anything that delayed our filing."[6]

■■■■ As noted in the September 18, 1995 Order, this case presents an added difficulty in that B & L's claim of a waiver of the attorney-client privilege is based upon an oral statement which was not recorded. Thus, the parties lack consensus on exactly what Dr. Arno said. Alcon does not dispute that an oral statement can provide the basis for a claim that the privilege has been waived. It also appears settled that disclosure of the "exact words" of an attorney-client communication are not necessary to find that a waiver has taken place. *United States v. Tellier*, 255 F.2d 441 (2d Cir.1958) (the privilege attaches to the substance of a communication and not to the particular words used to express the communication's content); *United States v. Cote*, 456 F.2d 142 (8th Cir.1972). See also *United States ex rel. Mayman v. Martin Marietta Corp.*, 886 F.Supp. 1243 (D.Md.1995) (a party need not quote from a particular communication in order to waive the privilege; a summary, paraphrase or clear reference to substance of the communication can waive confidentiality of that communication). Nor is it necessary that the disclosure state the entirety of the attorney-client communication. *In Re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1984) (disclosure of any significant part of attorney-client communication waives the privilege).

■■■■ Considering the newly presented evidence, the Court finds that Dr. Arno's statement constitutes the disclosure of attorney-client privileged information regarding the advise Alcon received from litigation counsel as to whether it would be advisable to file the "Rosenthal case" during the pendency of the *Allergan* litigation. In particular, the testimony of Ms. Cheng provides sufficient details, combined with Mr. Polyn's affidavit, of the statement made by Dr. Arno at the March 22, 1994 meeting to the effect that Alcon had communicated with its counsel regarding whether or not the "Rosenthal case" should be filed during the pendency of the *Allergan* litigation. The testimony from Ms. Cheng also supports the contention that Dr. Arno disclosed the substance of that communication—that counsel determined that it would be inadvisable to file the "Rosenthal case" during the pendency of the *Allergan* litigation.

In light of the above determination, the Court must also consider Alcon's claims that even if Dr. Arno's statements constitute disclosure of the substance of a privileged attorney-client communication, that such state-

---

5. The deposition transcript fails to denote the completion of the attorney's question and the start of the witness's response. From the context of the discussion, the Court assumes that Dr. Arno's answer begins at this point.

6. A portion of the transcript of Dr. Van Duzee's deposition testimony is attached as Exhibit 6 to B & L's motion papers.

ments should not be deemed a waiver of the privilege inasmuch as the disclosure was made during a settlement conference at that the parties had agreed that the settlement discussions would be conducted "without prejudice".

Although the courts have recognized that the question of whether a waiver of privilege has taken place during a settlement conference must be considered in light of the importance of facilitating the settlement process, the predominant view of the relevant case law holds that the disclosure of privileged information during settlement conferences does constitute a waiver of the privilege. See *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir.1988); *In re Chrysler Motors Corp.*, 860 F.2d 844 (8th Cir.1988); *R. J. Hereley & Son Co. v. Stotler & Co.*, 87 F.R.D. 358 (N.D.Ill.1980); *Burlington v. Exxon*, 65 F.R.D. 26 (D.Md.1974).

For the purposes of B & L's request for disclosure and discovery, the Court concludes that based upon Dr. Arno's statements, Alcon has waived its attorney-client privilege with respect to communications with counsel on the narrow subject matter of whether the "Rosenthal case" should be filed during the pendency of the *Allergan* litigation. Accordingly, the Court directs that Alcon supplement its responses to the relevant B & L discovery requests which seek disclosure of communications between Alcon and its litigation counsel regarding the advisability of filing the "Rosenthal case" during the pendency of the *Allergan* litigation.

 Separate and independent from B & L's claims regarding the alleged disclosure by Dr. Arno, B & L also contends that the testimony of another Alcon employee, Gregg Brown, also constitutes a disclosure waiving the attorney-client privilege on the issue of whether Alcon delayed its patent application. Because he responded to questions regarding whether he delayed the filing of the application because of the Allergan litigation (which

he denied), B & L claims that Brown waived Alcon's attorney-client privilege.

At his deposition, Brown testified as follows [7]

Q: Prior to June, 1989, did you consider the positions taken in the Allergan case to be inconsistent with the contents of the draft patent application you had drafted in January 1988?

. . .

A: No, because at that point in time I didn't consider the claims that I had written in the draft patent application to be patentable, and I didn't consider the Allergan claims to be patentable either.

Specifically, B & L points to two question-responses:

Q: Do you believe filing the patent application would have required you to take an inconsistent position with Alcon's position in the Allergan litigation?

A: There really wasn't an issue in my mind, because the patent application was not ready to be filed at that time. It needed a substantial amount of additional work, and a lot of thought about how to bring forth from the work the inventors had done and were still doing at that time, the basis for patentability [8].

. . .

Q: Did Alcon intentionally, postpone the filing of its patent application directed to a one-step cleaning disinfecting product for one or more reasons related to the Allergan litigation?

A: No. I think we talked at some length about how the Allergen litigation had an impact on the department's workload. Other than that, the litigation wasn't a factor. Other than that and the prior art discovered as a result of the litigation.[9]

This claim, based on Brown's testimony, was not properly raised in B & L's original

---

7. A portion of the transcript of Brown's deposition testimony is attached as Exhibit 5 to B & L's motion papers.

8. Transcript of Brown's deposition testimony is attached as Exhibit 5 to B & L's motion papers, at page 178.

9. Transcript of Brown's deposition testimony is attached as Exhibit 5 to B & L's motion papers, at page 181.

underlying motion. Therefore, it is questionable as to whether this issue is properly raised in B & L's instant motion for reconsideration. Inasmuch as Alcon does not challenge the procedural propriety of this claim, and instead, responds to B & L's allegations, the Court has considered the claim and finds that contrary to B & L's contention, these question-responses do not disclose the substance of any attorney-client privileged communication.

### Conclusion

Based on the above, based upon Dr. Arno's statements, Alcon has waived its attorney-client privilege with respect to communications with counsel on the narrow subject matter of whether the "Rosenthal case" should be filed during the pendency of the *Allergan* litigation. Accordingly, Alcon is directed to supplement its responses to the relevant B & L discovery requests which seek disclosure of communications between Alcon and its litigation counsel regarding the advisability of filing the "Rosenthal case" during the pendency of the *Allergan* litigation. The Court's September 18, 1995 Order is vacated solely to the extent that its holdings are inconsistent with this Memorandum & Order.

So Ordered.