UNITED STATES of America

v.

William H. WHITE, Sr., Appellant.

UNITED STATES of America

v.

Lester H. FINOTTI, Jr., Appellant.

Nos. 89–3022, 89–3027.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 19, 1989.

Decided Oct. 10, 1989.

David P. Towey, with whom Plato Cacheris and Barbara Rowland, Washington, D.C. were on the brief, for appellant in No. 89–3022.

Sean Connelly, Washington, D.C. (appointed by this Court), for appellant in No. 89–3027.

Amy L. Wax, Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., Washington, D.C., was on the brief for appellee. John R. Fisher, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before EDWARDS, RUTH BADER GINSBURG, and SILBERMAN, Circuit Judges.

RUTH BADER GINSBURG, Circuit Judge:

Judgments of conviction stemming from a government officer's relationship with a private firm are the subject of these appeals. Defendant-appellant William H. White, Sr., was President and sole shareholder of Southern Investment Company (Southern). Defendant-appellant Lester H. Finotti, Jr., was a branch chief of the Office of Transportation Audits of the United States General Services Administration (GSA). White and Southern entered into a "consulting" arrangement with Finotti, under which Southern made regular monthly payments to Finotti. In exchange for these payments, Finotti used his GSA position to advance Southern's business interests.

After trial in the federal district court for the District of Columbia, White and Finotti were convicted of conspiring to defraud the United States, 18 U.S.C. § 371. Finotti was also convicted of bribery, 18 U.S.C. § 201(c), three counts of conflict of interest, 18 U.S.C. § 208, and making a false statement to the United States government, 18 U.S.C. § 1001.

White contends on appeal that the district court improperly admitted highly prejudicial evidence of a privileged communication from his attorney. White also asserts that the prosecutor, in his closing argument, improperly alluded to the wealth of White and Southern. Finotti challenges his bribery conviction for lack of venue. He contests his convictions for conflicts of interest as inconsistent with the statute and barred by double jeopardy, and he assails his false statement conviction as impermissible under the "exculpatory no" doctrine and the fifth amendment. Finotti also argues that his conviction on all counts should be overturned because the trial court improperly permitted cross-examination of a character witness with hypotheticals that assumed Finotti was guilty of the crimes for which he was on trial. Finally, both defendants contend that the prosecutor constructively amended the indictment by arguing in his summation that the alleged conspiracy to defraud the United States was a conspiracy to receive bribes.

We reverse White's conviction because a central piece of evidence against him was protected by the attorney-client privilege.[1] We reverse Finotti's conviction for bribery because venue was not proper in the District of Columbia. We affirm Finotti's convictions for conspiracy, conflicts of interest, and making a false statement to the United States government.

I. Breach of White's Attorney-Client Privilege

White's principal defense to the charges against him was a general denial of criminal intent. Finotti initially advanced the specific defense that he had relied on the advice of White's counsel. As the trial unfolded, Finotti asserted more definitively that he had been tricked into the agreement at issue by White and White's counsel, Hubert N. Cannon, Jr. In support of this defense, Finotti introduced evidence that during a meeting on the morning of March 1, 1985, Cannon stated that the consulting arrangement would be legal if approved by Finotti's superiors. The government then introduced, over White's objection, evidence that Cannon told White later that day that the arrangement would be illegal even if Finotti had superior officer approval.

The district court allowed this prosecution evidence on alternative bases. First, the court held that Finotti's introduction of counsel's unprivileged morning statements "opened the door" to introduction of the counsel's privileged afternoon conversation. *See United States v. Lester H. Finotti, Jr., William H. White, Sr., Carmine DePietro,* 701 F.Supp. 830 (D.D.C.1988) (Memorandum and Order admitting evidence) (hereafter "Mem. Order"). Second, the court declared that White had waived the privilege either by defending on the ground of lack of criminal intent or by asserting to GSA investigators that his attorneys "had thoroughly reviewed the decision to employ Finotti after ... looking at the matter from nine different ways." *Id.* at 835. Finally, although the court did not formally do so, it indicated its readiness to overturn an earlier ruling and find that the communications fell under the crime-fraud exception to the attorney-client privilege. *See id.* at 835; *United States v. Lester H. Finotti, Jr., William H. White, Sr., Carmine DePietro,* Crim. No. 88–0286, 1988 WL 129723 (D.D.C. Nov. 17, 1988) (Memorandum and Order excluding testimony protected by the attorney-client privilege). None of these rationales, we conclude, can support admission of the evidence.

As to the first ground for the district court's ruling, the trial judge apparently believed that White and Finotti had raised a common defense of "permission," and that Finotti therefore could open the

---

**1.** We therefore do not address White's other issues on appeal.

door to privileged communications between White and Cannon. In fact, however, the two defendants took discrete positions. White maintained that he reasonably relied on Finotti's representation that Finotti had the permission of superior GSA officers, while Finotti ultimately contended that he had been misled by White and the statements of White's counsel. In any event, precedent in point is clear: Under the circumstances presented, only the privilege-holder, White, could waive the privilege. The prosecution may not gain, through the device of a joint trial, admission against one defendant of otherwise inadmissible evidence on the happenstance that the door to admitting the evidence has been opened by a co-defendant. *See United States v. Asher*, 854 F.2d 1483, 1499–1500 (3d Cir.1988), *cert. denied,* —— U.S. ——,. 109 S.Ct. 836, 102 L.Ed.2d 969 (1989); *United States v. Boyce*, 849 F.2d 833, 837 (3d Cir.1988); *United States v. Jones*, 839 F.2d 1041, 1054 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 1999, 100 L.Ed.2d 230 (1988); *United States v. Davis*, 838 F.2d 909, 916 (7th Cir.1988); *United States v. Pearson*, 746 F.2d 787, 795–96 (11th Cir.1984); *United States v. Figueroa*, 618 F.2d 934, 944 (2d Cir.1980). Indeed, the government candidly conceded the district court's misstep by disclaiming reliance on the door-opening rationale in defending this appeal. If the district court believed that the evidence of the morning conversation, while crucial to Finotti's defense, would mislead the jury in White's favor unless clarified by the later conversation, the court should have severed the trials. *See Davis*, 838 F.2d at 916; *Jones*, 839 F.2d at 1054; *Figueroa*, 618 F.2d at 944.

■ The district court's alternative holding that White waived his attorney-client privilege with regard to the afternoon conversation by putting the government to its proof on the issue of his criminal intent is scarcely more tenable. A rule thus forfeiting the privilege upon denial of *mens rea* would deter individuals from consulting with their lawyers to ascertain the legality of contemplated actions; it would therefore undermine the animating purpose of the privilege.

The district court apparently equated White's denial of criminal intent with a reliance-on-advice-of-counsel defense, which would have waived the privilege. Reliance on advice of counsel is an affirmative defense, an assertion more positive and specific than a general denial of criminal intent. To be acquitted for lack of criminal intent, White did not need to introduce any evidence of communications to and from Cannon, and he did not do so. *See* Brief for the United States at 15. Indeed, White carefully refrained from relying on any statements of counsel and expressly disavowed any intent to rely on an advice-of-counsel defense. Transcript, Vol. IIB at 8–10.

Instead, as earlier stated, White maintained that he believed the arrangement with Finotti was legal because Finotti reported having received permission from his superiors. Transcript, Vol. IIA at 45. White mentioned that Cannon and others were present when Finotti asserted that he had GSA permission to consult for Southern, in part because Finotti had mentioned in his opening statement Cannon's presence at the March 1, 1985 morning meeting. *Id.* at 36; Transcript, Vol. IIB at 10. But acknowledgement that one's attorney was present during a conversation is not equivalent to affirmative reliance on his advice that one's action is legal.

In fact, to be acquitted for lack of criminal intent, White need not have presented any evidence. Intent is an element of the offense the government must prove. It was White's constitutional right to put the government to its proof on all the elements of the offense. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). To penalize him for exercising this right by holding that he waived his attorney-client privilege would cut short both the privilege and the right.

■ The district court also erred in concluding that White waived his privilege by his comment during a preliminary GSA investigation that his attorneys "had thoroughly reviewed the decision to employ Finotti after ... looking at the matter from

nine different ways." A general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege. The government acknowledged as much when it admitted at oral argument that if the GSA investigators had followed up White's undetailed assertion by asking what his attorneys had told him, White at that point still would have been able to claim his privilege and refuse to answer. A contrary rule would ill-serve the policies underlying the doctrine of implied waiver. *See* 8 J. WIGMORE, EVIDENCE § 2237 (McNaughton ed. 1961) (waiver predicated on implied intention of defendant and concerns of fairness and consistency). An averment that lawyers have looked into a matter does not imply an intent to reveal the substance of the lawyers' advice. Where a defendant neither reveals substantive information, nor prejudices the government's case, nor misleads a court by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver. *See In re von Bulow*, 828 F.2d 94, 101–02 (2d Cir.1987); *United States v. Aronoff*, 466 F.Supp. 855, 862 (S.D.N.Y.1979).

Under the law of this circuit, a defendant can waive his attorney-client privilege by releasing documents to or allowing his attorney to testify before an investigative body at the pretrial stage. *See, e.g., In re Sealed Case*, 877 F.2d 976 (D.C.Cir.1989); *In re Subpoenas Duces Tecum*, 738 F.2d 1367 (D.C.Cir.1984); *In re Sealed Case*, 676 F.2d 793 (D.C.Cir.1982); *Permian Corp. v. United States*, 665 F.2d 1214 (D.C.Cir. 1981). However, pretrial disclosures have been found to waive the privilege only where a defendant disclosed the substance of privileged documents or permitted actual testimony by his attorney before an investigative body. Here, in contrast, White never released any substantive information about his attorneys' review of the arrangement with Finotti and did not refer to any particular instance of review.

■ Finally, on this record, this court cannot find that the crime-fraud exception justifies admission of the evidence. The crime-fraud exception has a precise focus: It applies only when the communications between the client and his lawyer further a crime, fraud or other misconduct. It does not suffice that the communications may be related to a crime. To subject the attorney-client communications to disclosure, they must actually have been made with an intent to further an unlawful act. *See In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir. 1985); *accord In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir.1986); *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986) (per curiam).

■ The district court suggested that the March 1, 1985 morning conversation was part of a scheme to create a false appearance that White had no criminal intent and therefore furthered a crime or fraud. Mem. Order at 16–17. The only basis for this conclusion, however, was the fact that Cannon's statements in the morning differed from his advice in the afternoon. All other indications were to the contrary: Cannon testified that he and White had virtually no discussion of Finotti before the morning meeting, Transcript, Vol. V at 42–45, and White did not rely on an advice of counsel defense at any stage of the judicial proceedings. *See supra* p. 6. Nothing dispelled the reasonable inference that Cannon altered his opinion after he had time for fuller reflection.

We would have to distend this evidence to conclude that Cannon deliberately participated in a scheme to provide an advice-of-counsel defense, albeit one that White never used, in order to manufacture a justification for conduct Cannon had counseled against. Far from showing that Cannon's advice was intended to further a crime or fraud, the evidence suggests, in line with the district court's initial ruling, that Cannon's advice was intended to prevent unlawful conduct. White's failure to heed his lawyer's counsel does not alter this critical facet of the case.[2]

---

**2.** Our decision is, of course, based on the evidence now in the record. Should the government, if it decides to retry White, present evidence to the district court sufficient to suggest

The district court's ruling on waiver and its second thoughts on the crime-fraud exception would deny White the privilege where even its stern critics acknowledge that the justifications for the shield are strongest—where a client seeks counsel's advice to determine the legality of conduct *before* the client takes any action. *See, e.g.,* Kaplow & Shavell, *Legal Advice About Information to Present in Litigation: Its Effects and Social Desirability,* 102 HARV.L.REV. 567, 597–98 (1989). Implied waiver, in sum, is not appropriately invoked when a "client has gone to his attorney in good faith, seeking an opinion as to the legality of certain conduct in an area where legal boundaries may be difficult for the layman to discern." *In re Doe,* 551 F.2d 899, 902 (2d Cir.1977).

■ Because the afternoon conversation was central to the government's proof that White had criminal intent, its improper admission cannot be deemed harmless. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). White's conviction must be reversed.

II. IMPROPRIETY OF VENUE IN THE DISTRICT OF COLUMBIA

■ Finotti's bribery conviction must also be reversed, because under the controlling precedent of this circuit, venue for bribery lies only in a district in which the defendant committed unlawful acts and is not proper in a district where only the effects of the crime occur. This rule was established in *United States v. Swann,* 441 F.2d 1053 (D.C.Cir.1971), which held that venue in a prosecution for attempting to

intimidate or influence a witness, 18 U.S.C. § 1503 (1964), did not lie in the District of Columbia, where the witness whom the defendant had attempted to influence would testify, but lay only in the district where the attempt to influence was made.[3] The differences between the crime charged in *Swann* and the bribery charge in this case do not admit of a legal distinction sufficient to justify this panel's departure from *Swann.*

No acts necessary to establish the crime of bribery occurred in the District of Columbia. Finotti and White agreed to the consulting arrangement in discussions held in North Carolina and Virginia. The payments were mailed from North Carolina to Finotti's home in Maryland, where he deposited them in his local account.[4] The crime is completed upon the public officer's receipt or agreement to receive payments for an official act. *See* 18 U.S.C. § 201(c) (1982). Although Finotti committed many official acts in the District of Columbia, proof that he was actually influenced in any such acts is not an element of the bribery offense. *See United States v. Brewster,* 408 U.S. 501, 526, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972). Thus, under *Swann,* venue was not proper in the District of Columbia, and Finotti's conviction for bribery must be reversed.

III. CONCURRENT PUNISHMENT FOR CONFLICT OF INTEREST AND BRIBERY

■ Finotti also argues that he cannot be prosecuted and punished under both the conflict of interest and the bribery statutes.[5] However, concurrent prosecution

---

that Cannon's advice was indeed sought to *further* a crime or fraud, our disposition here would not prevent the court from concluding that the exception applies.

3. Other circuits disagree with our holding in *Swann;* they have held that venue under 18 U.S.C. § 1503 is also proper in the place (district) of the proceeding that the defendant sought to obstruct. *See United States v. Frederick,* 835 F.2d 1211 (7th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1747, 100 L.Ed.2d 210 (1988); *United States v. Reed,* 773 F.2d 477 (2d Cir.1985); *United States v. Kibler,* 667 F.2d 452 (4th Cir.), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982); *United States v.*

*Barham,* 666 F.2d 521 (11th Cir.), *cert. denied,* 456 U.S. 947, 102 S.Ct. 2015, 72 L.Ed.2d 470 (1982); *United States v. Tedesco,* 635 F.2d 902 (1st Cir.1980), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981); *United States v. O'Donnell,* 510 F.2d 1190 (6th Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975).

4. Finotti gave one check to a friend in need of financial assistance who deposited it in her account in West Virginia.

5. Because the government might seek to retry Finotti on the bribery charge in a place of proper venue, we do not regard this issue as moot.

and sentencing under the statutes contravenes neither the statutes themselves nor the Double Jeopardy Clause because the statutes define two separate crimes with independent elements.

There is no evidence in either the bribery or the conflict of interest statutes or their legislative histories that Congress intended prosecution or punishment under the two to be mutually exclusive. Congress did attempt in 1962 to "integrate" bribery and conflict of interest laws to "comprise a consistent and coordinated whole." H.REP. No. 748, 87th Cong., 1st Sess. 2, 6 (1961). However, Congress's express aim was to eliminate "overlap and inconsistency" *within* the several pre–1962 bribery statutes and *within* the several pre–1962 conflict statutes, not *between* the conflict and bribery laws. *Id.* at 3, 7.

The court must therefore apply the test set out in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether concurrent punishment is barred by double jeopardy. *See United States v. Coachman,* 727 F.2d 1293, 1299 (D.C.Cir.1984). *Blockburger* allows separate punishment for the same conduct under two statutes if " 'each provision requires proof of a fact the other does not.' " *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182 (quoting *Morey v. Commonwealth,* 108 Mass. 433 (1871) (holding that prosecution for both "lewd and lascivious cohabitation" and "adultery" was not double jeopardy)). Finotti admits a federal official can violate the conflict statute without taking bribes. Brief of Appellant Lester H. Finotti, Jr., at 25. Similarly, an official can violate the bribery statute without violating the conflict statute if he declines to act on the matter for which he takes the bribe. While the conflict statute requires a showing that the official "participate[d] personally and substantially" in the government action, 18 U.S.C. § 208(a), actually being influenced in one's official acts is not an ingredient of the bribery offense. *See* 18 U.S.C. § 201(c) (1982);

*Brewster,* 408 U.S. at 526, 92 S.Ct. at 2544. Thus, punishment under both statutes does not constitute double jeopardy.

IV. "EXCULPATORY NO" DOCTRINE AND FIFTH AMENDMENT

Finotti next argues that his conviction for making a false statement under 18 U.S.C. § 1001 must be overturned because it falls under the "exculpatory no" exception to the statute. Alternatively, Finotti argues his conviction violates the fifth amendment's privilege against self-incrimination.[6]

Several circuits have adopted an "exculpatory no" exception that excludes from the definition of "statements" under § 1001 mere exculpatory denials to government investigations. *See United States v. Cogdell,* 844 F.2d 179, 183 (4th Cir.1988); *United States v. Medina de Perez,* 799 F.2d 540, 545 (9th Cir.1986); *United States v. Tabor,* 788 F.2d 714, 718 (11th Cir.1986); *United States v. Fitzgibbon,* 619 F.2d 874, 880 (10th Cir.1980); *United States v. Chevoor,* 526 F.2d 178, 183 (1st Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *Paternostro v. U.S.,* 311 F.2d 298, 309 (5th Cir.1962). Finotti claims this doctrine precludes his conviction for answering "none" to a question on a standard GSA financial disclosure form asking him to list all corporations with which he had any financial or employment connection.

This circuit has never clearly adopted or rejected the doctrine. *See Paternostro,* 311 F.2d at 305 (distinguishing *Marzani v. United States,* 168 F.2d 133 (D.C.Cir.), *aff'd,* 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431 (1948), because the statements there were made to obtain or retain a government position); *United States v. North,* 708 F.Supp. 364, 369 (D.D.C.1988) (noting that this circuit has never adopted or rejected the doctrine but finding it inapplicable on the facts presented). We need not set law for the circuit in this case, because

---

**6.** Although Finotti did not raise these issues below, the government did not object to his presenting them before this court. Since the issues have been fully briefed and do not re-

quire any further factual development for proper resolution, we exercise our discretion to decide them.

the doctrine, in any event, does not shield from prosecution under section 1001 false responses to questions in an administrative rather than investigative proceeding. *See Cogdell,* 844 F.2d at 183 (4th Cir.); *Medina de Perez,* 799 F.2d at 545 (9th Cir.); *United States v. Hajecate,* 683 F.2d 894, 901 (5th Cir.1982), *cert. denied sub nom. Eisenberg v. United States,* 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983); *Fitzgibbon,* 619 F.2d at 880 (10th Cir.); *cf. United States v. Payne,* 750 F.2d 844, 863 n. 21 (11th Cir.1985) (rejecting administrative/investigative distinction in "exculpatory no" defenses to 18 U.S.C. § 1006 in part because "this distinction is based on the legislative intent behind 18 U.S.C. § 1001"); *United States v. Morris,* 741 F.2d 188, 191 (8th Cir.1984) (declining to adopt the defense but noting that it does not apply to an administrative inquiry); *Chevoor,* 526 F.2d at 183 (1st Cir.) (emphasizing that the false statement was made during a government-initiated investigation). Finotti's response on a routine administrative form thus does not fall within any "exculpatory no" exception.

■ Nor were Finotti's fifth amendment rights violated. *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and similar cases establish only that a defendant cannot be convicted for failing to provide information; they do not impose a rule prohibiting conviction of defendants who lie. *See id.; Haynes v. United States,* 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Albertson v. Subversive Activities Control Board,* 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). The Supreme Court has made clear that the fifth amendment does not provide "a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." *Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969) (footnote omitted). *See also United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969). Finotti could have refused to answer the incriminating question. Or, if he reasonably believed that he would lose his job for refusing to answer, he could have answered without waiving his fifth amendment privilege. *See Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Instead, he chose a third, unprotected response: He lied. He cannot now avail himself of the fifth amendment.

## V. ADDITIONAL ALLEGED TRIAL ERRORS

■ Finotti's contention that his conviction for conspiracy must be reversed because the prosecutor constructively amended the indictment is also unavailing. Finotti maintains that the prosecutor altered the complaint by arguing in summation that the conspiracy to defraud the United States charged in the indictment was a conspiracy to receive bribes. Actually, the prosecutor argued only that the conspiracy to defraud was carried out by means of bribery. *See* Transcript, Vol. VIII at 10, 18. This argument neither literally nor effectively altered the terms of the indictment. *See Gaither v. United States,* 413 F.2d 1061, 1071 (D.C.Cir.1969). In any case, Finotti's counsel conceded at oral argument that the judge's charge did not deviate from the indictment. The correct charge thus checked any summation error. *See United States v. Iozzi,* 420 F.2d 512, 515–16 (4th Cir.1970), *cert. denied,* 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971).

■ Nor did the district court err by permitting cross-examination of a character witness with hypotheticals that assumed Finotti was guilty of the crimes for which he was on trial. The decision whether to permit such cross-examination lies in the discretion of the trial court, *see United States v. Lewis,* 482 F.2d 632 (D.C.Cir. 1973), and the court did not abuse its discretion here. Cross-examination of witnesses who testify only to the defendant's community reputation with hypotheticals assuming guilt may be improper. *See id.; United States v. Polsinelli,* 649 F.2d 793, 795–97 (10th Cir.1981); *United States v. Curtis,* 644 F.2d 263, 269 (3d Cir.1981); *United States v. Candelaria–Gonzalez,* 547 F.2d 291, 294 (5th Cir.1977). However, similar cross-examination of witnesses who—as the witness did here, Transcript,

Vol. V at 150–51—give their own opinion of the defendant's character is not error. *See Polsinelli*, 649 F.2d at 796 (10th Cir.); *United States v. Palmere*, 578 F.2d 105 (5th Cir.1978) (per curiam), *cert denied*, 439 U.S. 1118, 99 S.Ct. 1026, 59 L.Ed.2d 77 (1979); *United States v. Morgan*, 554 F.2d 31, 33 (2d Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977).

CONCLUSION

We reverse White's conviction for conspiracy under 18 U.S.C. § 371 because the district court improperly admitted privileged evidence. We reverse Finotti's conviction for bribery under 18 U.S.C. § 201(c) because venue was not proper in the District of Columbia. We affirm Finotti's convictions for conspiracy, 18 U.S.C. § 371, conflicts of interest, 18 U.S.C. § 208, and making a false statement to the United States, 18 U.S.C. § 1001.

*It is so ordered.*