# United States Court of Appeals
## For the First Circuit

No. 25-1251

UNITED STATES OF AMERICA,

Appellee,

v.

SPINEFRONTIER, INC.,

Interested Party, Appellant,

ADITYA HUMAD,

Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

---

Before

Rikelman, Lipez, and Aframe,
Circuit Judges.

---

Robert L. Peabody, with whom Husch Blackwell LLP was on brief, for appellant.

Karen L. Eisenstadt, Assistant United States Attorney, with whom Leah B. Foley, United States Attorney, was on brief, for appellee.

---

November 26, 2025

---

**RIKELMAN**, <u>Circuit Judge</u>.  We must decide if an executive impliedly waived a corporation's attorney-client privilege by indicating his intent to invoke an "involvement-of-counsel" defense at his criminal trial.  Aditya Humad, the Chief Financial Officer (CFO) of SpineFrontier, Inc., a medical device company, faces criminal charges for allegedly violating the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b.  The district court determined that it would treat Humad's planned defense as effecting an implied waiver of SpineFrontier's attorney-client privilege as to his communications with its corporate counsel.  In turn, SpineFrontier -- which is no longer a party to the criminal case -- filed this interlocutory appeal to preserve its privilege.  In the days leading up to and after the district court's waiver order, the facts and procedural posture of the case shifted substantially.  As a result, we vacate the waiver order and remand so that the district court can evaluate the parties' current claims in light of these changed facts and the principles we describe in this opinion.

## I.  BACKGROUND

SpineFrontier designs, manufactures, markets, and sells spinal medical devices.  The company was founded by Dr. Kingsley Chin, who is also its principal shareholder, President, Chief Executive Officer (CEO), and sole Director.  Humad serves as the

company's CFO, Vice President of Business Development, Secretary, and Treasurer, but he is not a shareholder. Chin and Humad are SpineFrontier's only two officers.

On August 30, 2021, a grand jury charged SpineFrontier, Chin, and Humad with violating numerous criminal statutes, including the AKS. A violation of the AKS involves the "'knowing[] and willful[]' offer or payment of 'any remuneration (including any kickback, bribe, or rebate)' to induce a person to 'recommend . . . ordering any . . . service . . . for which payment may be made in whole or in part under a [f]ederal health care program.'" Guilfoile v. Shields, 913 F.3d 178, 188-89 (1st Cir. 2019) (alterations in original) (emphasis added) (quoting 42 U.S.C. § 1320a7b(b)(2)(B)).

The indictment alleged that from 2012 to 2019, the three defendants paid surgeons millions of dollars in bribes through a sham consulting program. The program was purportedly intended to compensate the surgeons for their time in providing technical feedback about SpineFrontier's products. According to the indictment, however, the surgeons did not in fact provide consulting services. Instead, Chin and Humad paid them substantial sums of money to induce them into ordering and using SpineFrontier's devices in surgeries subsidized by federal healthcare benefit programs. Humad allegedly calculated each payment based on both the volume of surgeries that the surgeon

performed using SpineFrontier's devices and the amount of revenue those surgeries generated for the company.[1]

During the development of its consulting program, SpineFrontier engaged an outside law firm, Strong & Hanni PC, to provide opinion letters about the legality of the proposed consulting agreements with surgeons. Chin and Humad subsequently distributed the opinion letters to surgeons to encourage them to participate in the program.

According to the opinion letters, Strong & Hanni had determined that the proposed consulting agreements complied with governing federal healthcare law, "subject to [certain] assumptions and qualifications" listed in the letters. Those "assumptions and qualifications" included that:

> (i) All documents examined are complete, authentic, accurate and the . . . formation of the proposed [consulting agreements is] in accordance with applicable state and federal law; and
>
> (ii) The compensation to be paid pursuant to . . . the [a]greement will be for bona fide services by the [c]onsultant consistent with fair market value, in arms'-length transactions; and

---

[1] On April 1, 2025, the grand jury issued a superseding indictment charging Chin and Humad with one count of conspiracy to violate the AKS and three counts of substantive AKS violations based on the same underlying conduct. The superseding indictment is now the operative indictment in Humad's criminal case, but because it postdates the district court's waiver order and includes substantially similar allegations, we describe only the initial indictment.

(iii) The parties will perform and implement the [a]greement as it is drafted, and the compensation agreed upon and actually paid to the [c]onsultant . . . will not be determined in a manner that takes into account the volume or value of any referrals or business.

The record before us is unclear about the extent of Strong & Hanni's involvement in the consulting program. The parties to this appeal contend that the firm was involved throughout the duration of the program. For example, SpineFrontier suggests that counsel attended company meetings and helped the company make its required public disclosures of the consulting payments.

In any event, the parties began to litigate whether the defendants could rely on a so-called "involvement-of-counsel" defense at trial to argue that they lacked the necessary willfulness to violate the AKS.[2] In an order issued in June 2024, the district court indicated that it was inclined to find a waiver if any of the three defendants planned to "argue or introduce evidence [at trial] of their attorneys' involvement to negate the mens rea the government must prove." The court explained that it would permit the defendants to highlight the involvement of "other persons," without regard to their professions, and still preserve

---

[2] The dispute developed after the district court rejected the government's motion to impose a waiver of SpineFrontier's attorney-client privilege as to all communications related to the consulting program based only on the distribution of Strong & Hanni's opinion letters.

- 5 -

the privilege. But it warned that any attempt to argue a lack of mens rea based on Strong & Hanni's role in the consulting program would entitle the government to probe the communications between those attorneys and the defendants.

Because the defendants had yet to confirm that they would rely on an involvement-of-counsel defense at trial, the district court concluded that there was no waiver at that time, but it put into place procedural guardrails to prevent any potential prejudice to the government. To minimize the unfairness of any late disclosure by the defendants, it permitted the government to serve subpoenas on Strong & Hanni for its communications with SpineFrontier on the topics covered by the opinion letters. The court then arranged to maintain the responsive, privileged documents under seal and set a deadline for the defendants to provide notice of any intent to raise the involvement-of-counsel defense at trial.

Chin and Humad asked the district court to reconsider its June 2024 waiver ruling on two grounds. First, they argued that unlike a traditional "advice-of-counsel" defense, which involves a party invoking specific legal advice to justify its conduct, their involvement-of-counsel defense would not disclose any privileged advice and thus should not work a waiver. In their view, a jury could reasonably conclude that the mere involvement of outside counsel in the consulting program made it less likely

- 6 -

that they knowingly and willfully violated the AKS. Second, Chin and Humad contended that even if the involvement-of-counsel defense could in other circumstances operate as a waiver, in this case, they lacked the authority to waive SpineFrontier's attorney-client privilege over its objection.

By the time that the district court issued its February 2025 order resolving the motion for reconsideration, the government had dismissed all charges against SpineFrontier, leaving Chin and Humad as the only defendants. Thus, in its decision, the court focused its implied-waiver analysis on Chin and Humad's collective authority to waive SpineFrontier's privilege.[3] The court reasoned that, without a waiver permitting the government to probe Chin and Humad's actual communications with outside counsel, there would be a risk of misleading the jury if they relied on counsel's involvement to negate their mens rea. As the court explained, a jury could mistakenly conclude that the law firm had sanctioned the consulting program as it was implemented, when in fact it may have based any approval on "inaccurate or incomplete information." Then, citing a public business record listing Chin and Humad as SpineFrontier's only two officers, the court concluded that Chin and Humad together had the

_____

[3] Shortly after the government dismissed the criminal charges against SpineFrontier, the company filed a notice of its continued objection to a finding of waiver of its attorney-client privilege.

- 7 -

authority to effect an implied waiver of the corporation's privilege.

In response to the district court's order, on March 3, 2025, Chin and Humad filed separate but simultaneous notices indicating that Humad planned to rely on the involvement-of-counsel defense at their joint trial, but Chin did not. In his notice, Humad explained that he "intends to elicit evidence concerning the presence or involvement of SpineFrontier's counsel in the company's consulting program" and to "argue that the presence or involvement of such attorneys . . . tends to show that [he] acted in good faith." He also clarified that he "does not intend to disclose any specific advice from counsel for SpineFrontier or to make arguments about such legal advice." Meanwhile, Chin's notice stated that he would not invoke the involvement-of-counsel defense at the joint trial. Like Humad, Chin also expressed an understanding that the attorney-client privilege at issue belonged to SpineFrontier.

The next day, the government filed a response accusing Chin and Humad of gamesmanship in attempting to circumvent the district court's prior waiver ruling. It asked the district court to sever Chin and Humad's trials to prevent Chin from reaping second-hand benefits from Humad's planned involvement-of-counsel defense. The court agreed to sever the trials; it did not,

- 8 -

however, make any specific finding about the government's allegation of gamesmanship.

The privilege issue came to a head when, on March 5, 2025, the district court informed the parties that, based on Humad's notice, it would "allow inquiry at Humad's trial into communications between [him] and SpineFrontier's counsel." To that end, the court stated that it would provide the government with "documents produced . . . by Strong & Hanni PC that constitute communications between . . . Humad and counsel."

The district court permitted SpineFrontier an opportunity to respond to its waiver ruling, but concluded in a March 7, 2025 order that there was "no basis to bar Humad from raising th[e] defense." The court then reiterated its finding that Humad's involvement-of-counsel defense "waives the privilege as to his communications with Strong & Hanni PC." As a result, those "communications between Humad and Strong & Hanni PC attorneys [would] be produced to the government." The court then stayed its March 7 order to "accommodate review of the privilege issue" through an immediate interlocutory appeal.

Well after the district court issued its March 7 order, Chin pleaded guilty to making false statements in violation of 18 U.S.C. § 1001(a)(2). The government dismissed all the other pending charges against him as part of the plea agreement. Thus,

Humad is now the only remaining defendant in the criminal case. His trial is currently scheduled for June 2026.

SpineFrontier timely appealed the March 7 order.

## II. DISCUSSION

"The standard of review concerning a claim of [attorney-client] privilege depends on the particular issue." Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011) (citing Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002)). "[Q]uestions of law [are reviewed] de novo, factual findings for clear error, and discretionary judgments," such as evidentiary determinations, "for abuse of discretion." United States v. Gorski, 807 F.3d 451, 459-60 (1st Cir. 2015); Lluberes, 663 F.3d at 23.

This appeal raises two key issues. First, whether Humad has the authority to waive SpineFrontier's privilege. And if so, second, whether his involvement-of-counsel defense in fact works a waiver. Like other federal courts of appeal, we are "cautious about finding implied waivers" and do so only when "principles of logic and fairness" demand it. In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.) (XYZ Corp.), 348 F.3d 16, 23 (1st Cir. 2003); see In re Grand Jury Procs., 219 F.3d 175, 183 (2d Cir. 2000). Whether fairness requires a waiver is a fact-based inquiry informed by the precise nature and circumstances of the disclosure. See XYZ Corp., 348 F.3d at 23.

We preview our conclusions before detailing our analysis. As we set out below, Humad's authority to waive the corporation's privilege depends on the extent of his shared identity and interests with SpineFrontier. See In re Grand Jury Procs., 219 F.3d at 185. Our ability to review this issue is limited, however, because the district court's waiver ruling occurred while Chin and Humad were still co-defendants. The record is thus insufficiently developed for us to determine whether Humad individually -- as opposed to Chin and Humad jointly -- can waive the corporation's privilege.

But even if Humad could waive SpineFrontier's privilege, we hold that not every involvement-of-counsel defense necessarily works a waiver. Generally, a waiver occurs when a party partially discloses an otherwise privileged attorney-client communication for strategic reasons. See United States v. Desir, 273 F.3d 39, 45 (1st Cir. 2001) (collecting sources). But when no privileged communication has been disclosed, a waiver conclusion is difficult to justify. See XYZ Corp., 348 F.3d at 24; see also Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982) (finding "at most" a limited waiver when no privileged communication was put at issue). Thus, for example, if Humad were to argue only that he would be less likely to break the law intentionally based on SpineFrontier's decision to retain Strong & Hanni, a waiver finding would not be warranted because Humad would not have

revealed any privileged communication. If, by contrast, he strays beyond that argument and suggests that Strong & Hanni approved the consulting program as it was executed, then a waiver could be justified. As the district court concluded, such a defense hinges on an implied, privileged communication by the attorneys: that the consulting program, as implemented, was legal. Without a full disclosure of what Humad told Strong & Hanni about the execution of the program, such that the government could test if the attorneys' approval was based on misinformation, Humad's planned argument to the jury would raise fairness concerns.

At this stage, with Humad not a party to the appeal, the precise scope of his planned defense remains elusive. But even if Humad's ultimate defense risks unfair prejudice to the government, we conclude that the district court should consider addressing any such prejudice through a limiting instruction and rulings under Federal Rules of Evidence 401 and 403 before finding an implied waiver.

## A. Jurisdiction

Before turning to the core issues, we start by addressing the government's contention that our jurisdiction in this case "is not clear." According to the government, SpineFrontier appealed the wrong order. As the government points out, SpineFrontier appealed the district court's March 7 order, not its March 5 order. That is significant, in the government's view, because the March

5 order sets forth the district court's ruling that Humad's defense requires a waiver of SpineFrontier's privilege. The March 7 order, the government claims, relates only to the court's conclusion that Humad has the authority to waive the corporation's privilege. The government therefore maintains that we lack jurisdiction to review the substance of the March 5 order -- that is, whether Humad's defense works a waiver.

We are not persuaded by the government's argument on this point. SpineFrontier, as a third party to the criminal case below, has invoked appellate jurisdiction under the <u>Perlman</u> exception to the final-order requirement of 28 U.S.C. § 1291. <u>See</u> <u>Perlman</u> v. <u>United States</u>, 247 U.S. 7 (1918). The <u>Perlman</u> exception permits a non-party owner of subpoenaed documents to "seek immediate appeal of a district court's order requiring production of those documents." <u>In re Grand Jury Subpoenas</u>, 123 F.3d 695, 697 (1st Cir. 1997). Both parties agree that the <u>Perlman</u> exception permits our review of the March 7 order.

Review of the March 7 order alone allows us to rule on the key privilege issues raised in this case. In that order, the district court explicitly stated that it "finds no basis to bar Humad from raising [the involvement-of-counsel] defense and . . . <u>finds that Humad's raising of this defense waives the privilege as to his communications with [SpineFrontier's counsel]</u>." (Emphasis added.) The court then stayed the March 7

- 13 -

order to "accommodate review of the privilege issue." (Emphasis added.) Thus, the March 7 order contains the composite holding that (1) Humad's planned defense requires a waiver and (2) Humad has the authority to invoke that defense and waive SpineFrontier's privilege. Because our jurisdiction over the March 7 order is sufficient to decide the issues posed by this appeal, we need not evaluate our jurisdiction to review the March 5 order.

## B. Implied Waivers

We turn to the relevant legal framework for evaluating a potential waiver of the attorney-client privilege. The "privilege attaches to corporations as well as to individuals." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985). It "protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp., 649 F.3d 5, 30 (1st Cir. 2011) (citing Upjohn Co. v. United States, 449 U.S. 383, 394-95 (1981)). At its core, the privilege is intended to promote "full and free discussion" between client and counsel to "better enabl[e] the client to conform his conduct to the dictates of the law." XYZ Corp., 348 F.3d at 22. But because it presents a considerable obstacle to "the search for truth," courts must construe the privilege "narrowly." Id.

The attorney-client privilege may be waived expressly or impliedly. See id. SpineFrontier and Humad have vigorously refused to expressly waive the corporation's privilege. Thus, the only issue here is whether Humad's planned defense can work an implied waiver of SpineFrontier's privilege.

"The concept of implied waiver[s] . . . is not well-developed in this circuit." Desir, 273 F.3d at 45. Nonetheless, we have recognized that "logic and fairness" are the touchstones of an implied-waiver analysis. XYZ Corp., 348 F.3d at 23. Typically, implied waivers occur when "the party asserting the privilege place[s] protected information in issue for personal benefit through some affirmative act." Id. at 24 (quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.41 (Joseph M. McLaughlin ed. 1997)). But because the demands of fairness vary from case to case, courts must carefully review the specific facts and circumstances of the disclosure to determine whether the privilege has been impliedly waived. See id. at 23; see also In re Grand Jury Procs., 219 F.3d at 183-90; United States v. White, 887 F.2d 267, 269-71 (D.C. Cir. 1989). In the corporate context, the relationship between the executive seeking to invoke privileged communications and the corporation that holds the privilege bears heavily on the fairness of an implied waiver. See In re Grand Jury Procs., 219 F.3d at 183-84.

We find the analysis in In re Grand Jury Proceedings to be instructive. See id. at 183-90. There, the U.S. Court of Appeals for the Second Circuit considered multiple factors to determine whether an executive's grand-jury testimony impliedly waived his company's attorney-client privilege. See id. at 180-81. First, the court evaluated whether the executive and company were "alter-egos" or otherwise shared an identity of interests. See id. at 185-86. Second, it reviewed the nature and context of the disclosure, including the extent to which the executive voluntarily revealed privileged communications. See id. at 186-88. And third, the court assessed the potential prejudice to the government, noting that any remedy should be "tailored" to the severity of the prejudice. See id. at 188-90.

The In re Grand Jury Proceedings factors provide a helpful framework for our inquiry. Again, though, we remain mindful that "courts should be cautious about finding implied waivers," and indeed, "the case law reveals few genuine instances of implied waiver." XYZ Corp., 348 F.3d at 23.

**1. The Relationship Between Humad and SpineFrontier**

We first consider Humad's relationship with SpineFrontier. If they are alter-egos, then Humad's defense could effect a waiver of the corporation's privilege. See In re Grand Jury Procs., 219 F.3d at 185. But not all executives are alter-egos of their employers, and the determination depends on

- 16 -

multiple considerations, including the executive's decision-making authority, the extent of their control over the corporation, and the corporation's public or private status. See id. For example, in In re Grand Jury Proceedings, the Second Circuit concluded that an executive who was the founder, CEO, and controlling shareholder of the corporation was not its alter-ego because the corporation was publicly held and had a board of directors, a large shareholder base, and several employees. See id.

The parties contest whether Humad and SpineFrontier are alter-egos. SpineFrontier argues that Chin is its only possible alter-ego because he is the founder, President, CEO, and sole member of the Board of Directors, and because he owns nearly one-hundred percent of the company's shares. Although Humad is the CFO, Secretary, and Treasurer, he owns no stock in the company, handles only the administrative and financial aspects of the business, and reports to Chin.

For its part, the government highlights that SpineFrontier is a closely held, privately owned company with only two officers: Chin and Humad. The government maintains that the separation between SpineFrontier on the one hand, and Chin and Humad on the other, is "illusory," and that they are weaponizing the corporate form so that they can use the privilege as a sword and a shield. On that basis, the government asserts that Humad should be treated as SpineFrontier's alter-ego.

- 17 -

But the government is wrong to treat Chin and Humad as a unit. Chin is no longer a co-defendant in Humad's criminal case. The district court severed their trials, and Chin has since entered a plea agreement, removing him entirely from the criminal proceeding. Yet the government repeatedly points to Chin and Humad's joint authority to waive SpineFrontier's privilege. It asserts, for example, that "in terms of decision-making, Chin and Humad effectively are SpineFrontier, and SpineFrontier is them." (First and third emphases added.) It further states that "[t]his alter-ego determination . . . establishes that SpineFrontier and its officers cannot rationally be treated as separate parties." (Emphasis added.) The relevant inquiry, however, is not whether Chin and Humad together are SpineFrontier; it is whether Humad on his own is SpineFrontier. Based on the record before us, whether Humad is SpineFrontier's alter-ego is far from clear.

Even without an alter-ego relationship, a tight alignment of interests may permit an executive to effect a corporate waiver. See In re Grand Jury Procs., 219 F.3d at 185. But if the executive's interest in defending against pending criminal charges plausibly "override[s] his fidelity to the corporation, including its interest in preserving the privilege," then imputing a waiver to the company may not be fair. Id.; see also id. at 187-88 (considering whether the corporation "itself [took] any affirmative steps to inject privileged materials into

- 18 -

the litigation," or if the executive's disclosure was intended "to exculpate himself personally").

SpineFrontier's and Humad's interests may well diverge. SpineFrontier does not currently face any criminal charges and has consistently sought to preserve its attorney-client privilege. Meanwhile, Humad seeks to invoke the involvement-of-counsel defense to avoid a criminal conviction, an interest that may "override his fidelity to the corporation." Id. at 185; cf. Weintraub, 471 U.S. at 348-49 (stating that corporate officers, "of course, must exercise the [corporation's] privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals"). Although the government asserts that "the corporation and its officers have an identity of interest[s]," its framing of the issue again improperly treats Chin and Humad as a single entity.[4] (Emphasis added.)

The district court conducted its principal waiver analysis when Chin and Humad were still co-defendants. The court

_____

[4] The government's continued treatment of Chin and Humad as if they were a unit stems from its assertion that they were coordinating their strategies by taking "irreconcilable" positions on the involvement-of-counsel defense at their originally scheduled joint trial. But the district court did not make any finding of gamesmanship; instead, it granted the government's request to sever the trials. Without any further findings by the district court on this issue, we do not see how this particular allegation of gamesmanship would be a basis to impute a waiver to SpineFrontier.

concluded that as "the controlling officers of SpineFrontier, [d]efendants Chin and Humad" could jointly waive the corporation's privilege. Ever since it severed the trials and Chin pleaded guilty, however, the court has not had the opportunity to determine whether Humad alone can waive SpineFrontier's privilege.[5]

The government maintains that the district court did not analyze Humad's authority to waive the privilege on his own because it determined nothing "material ha[d] changed" after it severed the trials. We are not so sure. As the government acknowledges, the implied-waiver inquiry is highly fact-dependent. See XYZ Corp., 348 F.3d at 23. That Chin -- who both parties agree is an alter-ego of SpineFrontier -- is no longer involved in Humad's criminal case constitutes a material change in circumstances that warrants a refreshed waiver analysis. We thus remand so that the district court can evaluate on a more developed record whether Humad and SpineFrontier are alter-egos or share an identity of interests.

Neither of the parties before us suggests a clear path forward if the district court determines that Humad lacks the authority to waive SpineFrontier's privilege. The government urges us to hold that, even without such authority, Humad has a

---

[5] We emphasize that the parties provided the district court with limited information on a compressed timeline, with trial then scheduled to commence just days after the government requested a severance.

Sixth Amendment right to present a defense that supersedes the corporation's privilege. The Supreme Court has left that question open, and without full briefing on the issue, we decline to resolve it at this time. See Swidler & Berlin v. United States, 524 U.S. 399, 408 n.3 (1998) (leaving open the possibility that "exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the privilege").

We note, however, that although the Sixth Amendment guarantees criminal defendants "a meaningful opportunity to present a complete defense," it does not grant "an unfettered right to offer testimony that is incompetent, privileged, or otherwise [inadmissible] under standard rules of evidence." United States v. Coleman, 149 F.4th 1, 34 (1st Cir. 2025) (alteration in original) (quoting United States v. Brown, 669 F.3d 10, 19 (1st Cir. 2012)); see also United States v. Pires, 642 F.3d 1, 13 (1st Cir. 2011) ("[T]he right to present a defense does not trump valid rules of evidence."). As the Supreme Court has stated, the Sixth Amendment does not require the admission of "evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes v. South Carolina, 547 U.S. 319, 326 (2006) (citing Fed. R. Evid. 403). Thus, Humad's Sixth Amendment rights may not win out if, for example, evidence of Strong & Hanni's

involvement risks substantial confusion or unfair prejudice relative to its probative value.  See Fed. R. Evid. 403.

If the district court determines that the evidence Humad seeks to introduce in support of his defense is admissible under "well-established rules of evidence," then it should consider whether alternative measures, such as a jury instruction, could neutralize any confusion or prejudice without a waiver of SpineFrontier's privilege.  See Holmes, 547 U.S. at 326; cf. United States v. Baltas, 236 F.3d 27, 35 (1st Cir. 2001) (acknowledging jury instructions as an appropriate method of minimizing prejudice).  Regardless, if the court concludes that Humad lacks the authority to waive SpineFrontier's privilege, it should "breach" the privilege for the purpose of trial only if it determines that "exceptional circumstances" justify doing so. Swidler & Berlin, 524 U.S. at 408 n.3.

## 2. The Nature of the Defense

We next evaluate the nature of Humad's involvement-of-counsel defense.  Specifically, assuming Humad has the authority to waive SpineFrontier's privilege, we consider whether his defense actually requires a waiver to avoid prejudice to the government.

Unlike other courts to review claims of implied waiver, we do not have the benefit of analyzing the actual disclosure of privileged attorney-client communications that triggered the

potential waiver.  See, e.g., XYZ Corp., 348 F.3d at 20.  Indeed, we remain unsure if Humad will make any disclosure of privileged information as part of his defense.  Without Humad as a party to this appeal, our ability to ascertain the exact contours of his proposed defense is limited.

We thus draw our understanding of Humad's planned defense primarily from his March 3, 2025 notice to the district court, supplemented by the government's and SpineFrontier's "interpretation[s]" of that notice.  In the March 3 notice, Humad stated that he "intends to elicit evidence concerning the presence or involvement of SpineFrontier's counsel in the company's consulting program."[6]  In so doing, he proposes to "argue [to the jury] that the presence or involvement of such attorneys . . . tends to show that [he] acted in good faith" and without the intent required to violate the AKS.

Humad's notice does little to clarify the exact nature of his proposed defense, which remains ambiguous.  The parties on appeal do agree, though, that Humad does not intend to reveal any specific attorney-client communications or argue that he relied on any particular legal advice.  In that sense, Humad's defense is distinct from the traditional advice-of-counsel defense, which we

---

[6] Of course, the defense that Humad eventually seeks to present at trial may be different than the defense he proposed in the March 3 notice.

have previously described as a "paradigmatic example of [an implied waiver]."[7]  XYZ Corp., 348 F.3d at 24.

The traditional advice-of-counsel defense involves the "pleader put[ting] the nature of its lawyer's advice squarely in issue."  Id.  "Implying a . . . waiver in such a case ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield."  Id.  If it were otherwise, the privilege holder could "selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process."  Id.

Citing White, SpineFrontier asserts that Humad's involvement-of-counsel defense does not introduce the fairness concerns that accompany the advice-of-counsel defense.  White recognized that the mere "acknowledgement that one's attorney was

_____

[7] To establish a formal advice-of-counsel defense, a defendant must show that:

> (1) [B]efore taking action, (2) he in good faith sought the advice of an attorney whom he considered competent, (3) for the purpose of securing advice on the lawfulness of his possible future conduct, (4) and made a full and accurate report to his attorney of all material facts which the defendant knew, (5) and acted strictly in accordance with the advice of his attorney who had been given a full report.

Liss v. United States, 915 F.2d 287, 291 (7th Cir. 1990).  Neither party contends that Humad's planned defense constitutes a formal advice-of-counsel defense.

- 24 -

present during a conversation is not equivalent to affirmative reliance on his advice that one's action is legal." 887 F.2d at 270. The court further held that "[a] general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege." Id. at 271 (emphasis added).

To be sure, the factual circumstances in White were different. We do not read that case to countenance every defense that "acknowledge[s]" counsel's involvement without "affirmative[ly] rel[ying]" on their advice. Id. at 270. But we do recognize that an involvement-of-counsel defense may skirt the fairness concerns that typically justify a waiver. Thus, we conclude that an involvement-of-counsel defense does not automatically trigger a waiver of the privilege.

Still, whether Humad's defense justifies a waiver will depend on what exactly he seeks to argue at trial, which, as of now, remains murky. As the district court concluded, to the extent Humad seeks to suggest that outside counsel were "watching" or "in the room" while the consulting program was ongoing, we agree that such a defense would be relevant only if a jury draws the inference that counsel must have approved of Humad's conduct in implementing the program. Thus, it would be unfair for Humad to proceed with such a defense without the government probing the extent of Strong & Hanni's knowledge of how the program was executed.

- 25 -

On the other hand, it may be that Humad merely seeks to argue that he was less likely to have formed the intention to violate the AKS because he knew that SpineFrontier had engaged a law firm to set up the consulting program and remain on retainer to address problems as they arose. In that scenario, we agree with the reasoning in White that such a defense does not work a waiver because there is no disclosure of privileged information. Such a defense would not, for example, inject any "substantive content" of attorney-client communications into the litigation. See id. at 271; see also XYZ Corp., 348 F.3d at 24. Nor does it require the jury to draw an inference that corporate counsel approved Humad's actions in implementing the program during the years it was in operation.

Humad's March 3 notice lends itself to either interpretation. On remand, the district court will have the opportunity to analyze the precise defense Humad seeks to raise at trial. Depending on the theory Humad advances, a reference to counsel's involvement to negate mens rea may not require a waiver of SpineFrontier's privilege.[8]

---

[8] The district court, of course, also has the discretion to address any shift in tactics by Humad during trial. The government would be unfairly disadvantaged if, mid-trial, Humad pivots from referencing the engagement of counsel to arguing that counsel approved the program. In that event, the court could resolve the issue as it deems fit, including through a limiting jury instruction or a brief continuance to allow the government to review the relevant communications.

- 26 -

### 3. The Potential Prejudice to the Government

Finally, we note the availability of alternative approaches to address any potential prejudice from Humad's defense. To begin, based on the arguments before us, we are skeptical that the defense raises a meaningful risk of prejudice to the government. Indeed, the government does not articulate any material prejudice that it faces. As the government acknowledges, the force of Humad's planned defense, at least as currently proposed, may well be undermined by introducing into evidence Strong & Hanni's opinion letters themselves. Those letters explicitly assumed that "the compensation agreed upon and actually paid to the [c]onsultant . . . will not be determined in a manner that takes into account the volume or value of any referrals or business."

Further, to the extent that the defense does risk prejudicing the government, the district court should consider relying on Federal Rules of Evidence 401 and 403 to mitigate such prejudice.[9] See United States v. Bankman-Fried, 22-cr-673, 2024 WL 477043, at *2-4 (S.D.N.Y. Feb. 7, 2024). Alternatively, as the

---

[9] The government contends that SpineFrontier has waived its right to seek an alternative to waiver because it did not propose any options to the district court. The availability of alternative solutions at trial, however, is germane to the fairness inquiry, as it helps assess the need for a waiver under the circumstances. See In re Grand Jury Procs., 219 F.3d at 189. Thus, we see no reason for the district court to avoid considering the suitability of non-waiver options on remand.

district court at one point contemplated, a jury instruction may adequately limit the risk of jury confusion.  We do not prejudge the appropriate remedy for any involvement-of-counsel defense that the district court may decide to permit at trial.  We note only that a waiver is a significant penalty, and less-onerous mechanisms may be available to address any prejudice.  See In re Grand Jury Procs., 219 F.3d at 189; XYZ Corp., 348 F.3d at 23.

### III. CONCLUSION

For all these reasons, we **vacate** the district court's March 7 order and **remand** for further proceedings consistent with this opinion.